Lyndel Anne Vargas
State Bar No. 24058913
CAVAZOS HENDRICKS POIROT, P.C.
Suite 570, Founders Square
900 Jackson Street
Dallas, TX 75202
Phone: (214) 573-7344
Fax: (214) 573-7399
Email: LVargas@chfirm.com

Attorneys for the Debtor-In-Possession

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| THE JUMBA, LLC, | § | Case No. 22-31740-sgj11 |
| | § | |
| Debtor. | § | |

**DISCLOSURE STATEMENT FOR THE CHAPTER 11 PLAN OF**
**REORGANIZATION OF THE JUMBA, LLC**

**IMPORTANT INFORMATION REGARDING THIS DISCLOSURE STATEMENT**
DISCLOSURE STATEMENT, DATED JANUARY 23, 2023

**SOLICITATION OF VOTES TO ACCEPT OR**
**REJECT**
**THE DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION**

**YOU ARE RECEIVING THIS DOCUMENT AND THE ACCOMPANYING**
**MATERIALS BECAUSE AS OF THE VOTING RECORD DATE, YOU HELD A**
**CLAIM AGAINST OR INTEREST IN THE DEBTOR IN ONE OF THE**
**FOLLOWING CLASSES AND THEREFORE YOU ARE ENTITLED TO VOTE**
**ON THE PLAN:**

| VOTING CLASSES | NAME OF CLASS UNDER THE PLAN |
|---|---|
| CLASS 1 | Parker County |
| CLASS 2 | Jack County |

| CLASS 3 | Johnson County |
|---------|----------------|
| CLASS 4 | Alvarado ISD |
| CLASS 5 | C&G Realty E, LLC |
| CLASS 6 | Leland B. Little |
| CLASS 7 | Pamela Diane Cunningham |
| CLASS 8 | Tri County Utilities |
| CLASS 9 | Joint Venture Obligation |

**DELIVERY OF BALLOTS**

1. Ballots must be actually received by the Solicitation Agent before the Voting Deadline (***).

2. Ballots may be returned by the following methods: (a) in the enclosed pre-paid, pre-addressed return envelope; (b) via first class mail, overnight courier, or hand delivery to the address set forth below; or
   (c) via electronic submission through the Solicitation        Agent's online       voting      portal     at ***.

***
***
***
***

If you have any questions on the procedures for voting on the Plan, please contact ****.

## RECOMMENDATION BY THE DEBTOR

DEBTOR STRONGLY RECOMMENDS THAT ALL HOLDERS OF CLAIMS OR INTERESTS WHOSE VOTES ARE BEING SOLICITED SUBMIT BALLOTS TO ACCEPT THE PLAN BY RETURNING THEIR BALLOTS SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT NO LATER THAN *** PURSUANT TO THE INSTRUCTIONS SET FORTH HEREIN AND ON THE BALLOTS. THE MANAGER AND SOLE MEMBER OF THE DEBTOR HAS APPROVED THE TRANSACTIONS CONTEMPLATED BY THE PLAN AND DESCRIBED IN THIS DISCLOSURE STATEMENT, AND THE DEBTOR BELIEVESS THAT THE COMPROMISES CONTEMPLATED UNDER THE PLAN ARE FAIR AND EQUITABLE, MAXIMIZE THE VALUE AND PROVIDES THE BEST RECOVERIES TO CLAIM AND INTEREST HOLDERS. AT THIS TIME, THE DEBTOR BELIEVES THAT THE PLAN AND RELATED TRANSACTIONS REPRESENT THE BEST ALTERNATIVE FOR ACCOMPLISHING THE DEBTOR'S OVERALL RESTRUCTURING OBJECTIVES.

**PLEASE NOTE THAT THE DESCRIPTION OF THE PLAN PROVIDED**

THROUGHOUT THIS DISCLOSURE STATEMENT IS ONLY A SUMMARY PROVIDED FOR CONVENIENCE PURPOSES.

THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARIES CONTAINED IN THIS DISCLOSURE STATEMENT AND THE PLAN.

A COPY OF THE PLAN TO WHICH THIS DISCLOSURE STATEMENT RELATES IS ATTACHED HERETO AS <u>EXHIBIT A</u>.

READERS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE AND SHOULD CONSULT WITH THEIR OWN ADVISORS BEFORE CASTING A VOTE WITH RESPECT TO THE PLAN.

THE DEBTOR HAS NOT AUTHORIZED ANY PERSON TO GIVE ANY INFORMATION OR ADVICE OR TO MAKE ANY REPRESENTATION IN CONNECTION WITH THE PLAN AND THIS DISCLOSURE STATEMENT.

THE INFORMATION IN THIS DISCLOSURE STATEMENT IS BEING PROVIDED SOLELY FOR THE PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN OR OBJECTING TO CONFIRMATION. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE USED BY ANY PARTY FOR ANY OTHER PURPOSE.

ALL EXHIBITS TO THE DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL IN THIS DISCLOSURE STATEMENT.

ANY DISCUSSION OF FEDERAL, STATE, LOCAL, OR NON-U.S. TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO THE READER OR A HOLDER OF A CLAIM OR INTEREST. READERS AND ALL HOLDERS OF CLAIMS OR INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL, AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.

<u>SPECIAL NOTICE REGARDING FEDERAL AND STATE SECURITIES LAWS</u>

Neither this Disclosure Statement nor the Plan has been filed with the United States Securities and Exchange Commission (the "<u>SEC</u>") or any state authority. The Plan has not been approved or disapproved by the SEC or any state securities commission, and neither the SEC nor any state securities commission has passed upon the accuracy or adequacy of this Disclosure Statement or the merits of the Plan. Any representation to the

contrary is a criminal offense.

This Disclosure Statement has been prepared pursuant to sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rule 3016(b). The Plan does not involve the issuance of any securities and thus its implementation is not subject to the filing of a registration statement filed with the SEC under the Securities Act of 1933, as amended (the "Securities Act"), or any securities regulatory authority of any state under applicable state securities law (collectively, the "Blue Sky Laws"). Furthermore there have been no prepetition solicitation of votes for the Plan. Neither the solicitation of votes nor this Disclosure Statement constitute an offer to sell or the solicitation of an offer to buy securities.

This Disclosure Statement contains "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Readers are cautioned that any forward-looking statements in this Disclosure Statement are based on assumptions that are believed to be reasonable, but are subject to a wide range of risks, including risks associated with the following: (a) future financial results and liquidity, including the ability to finance operations in the ordinary course of business; (b) the relationships with and payment terms provided by trade creditors; (c) additional post-restructuring financing requirements; (d) future dispositions and acquisitions; (e) the effect of competitive products, services, or procuring by competitors;(f) changes to the costs of commodities and raw materials; (g) the proposed restructuring and costs associated therewith; (h) the effect of conditions in the local, national, and global economy on the Debtor; (i) the ability to obtain relief from the bankruptcy court to facilitate the smooth operation of the Debtor's businesses under chapter 11; (j) the confirmation and consummation of the Plan; (j) the consummation of the replacement loan on the Jack County property; and (k each of the other risks identified in this Disclosure Statement. Due to these uncertainties, readers cannot be assured that any forward-looking statements will prove to be correct. The Debtor is under no obligation to (and expressly disclaims any obligation to) update or alter any forward-looking statements whether as a result of new information, future events, or otherwise, unless instructed to do so by the Bankruptcy Court.

THIS DISCLOSURE STATEMENT AND THE PLAN CONTAIN MATERIAL NON-PUBLIC INFORMATION CONCERNING THE DEBTOR AND ITS DEBTS.

You are cautioned that all forward-looking statements are necessarily speculative, and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward-looking statements. The liquidation analysis, financial projections, and other projections and forward-looking information contained herein and attached hereto are only estimates, and the timing and amount of actual distributions to Holders of Allowed Claims and Interests, among other things, may be affected by many factors that cannot be predicted. Any analyses, estimates, or recovery projections may or may not turn out to be accurate.

## Table of Contents

I: Executive Summary.................................................................................................7
II: Summary of the Plan..........................................................................................15
III: Confirmation of the Plan...................................................................................28

IV: Voting Instructions ...........................................................................................35
V: Risk Factors .......................................................................................................38
VI: Important Securities Laws Disclosures ............................................................40
VII: Certain US Federal Tax Consequences of the
Plan…………………………………………………...........................................40
VIII: Recommendation of the
Debtor…………………………………………………………………...................42

## **Exhibits**

Exhibit A       Plan of Reorganization

## I.  <u>Executive Summary</u>

**A.  Purpose of this Disclosure Statement and the Plan.**

The Jumba, LLC, as Debtor and Debtor-In-Possession (the "<u>Debtor</u>" or "<u>The Jumba</u>"), submits this disclosure statement (including all exhibits hereto, the "<u>Disclosure Statement</u>"), pursuant to sections 1125 and 1126 of the Bankruptcy Code, to  the Office of the U.S. Trustee, all holders of unliquidated administrative claims, holders of Class 1 through Class 7 ( Secured Claims against the Debtor), holders of Class 8 (General Unsecured Claim) against the Debtor, holders of Class 9 ( Joint Venturer)    connection with the solicitation of acceptances with respect to the *Chapter 11 Plan of Reorganization* (as may be amended or modified or supplemented from time to time and including all exhibits and supplements thereto, the "<u>Plan</u>"). A copy of the Plan is attached hereto as **<u>Exhibit A</u>** and incorporated herein by reference.

**THE DEBTOR STRONGLY RECOMMENDS THAT YOU VOTE TO <u>ACCEPT</u> THE PLAN. THE DEBTOR BELIEVES THAT THE COMPROMISES AND SETTLEMENTS CONTEMPLATED BY THE PLAN ARE FAIR AND EQUITABLE, MAXIMIZE THE VALUE OF THE DEBTOR'S ESTATE, AND MAXIMIZE RECOVERIES TO HOLDERS OF CLAIMS AND INTERESTS. THE DEBTOR BELIEVESS THE PLAN IS THE BEST AVAILABLE ALTERNATIVE FOR IMPLEMENTING A RESTRUCTURING OF THE DEBTOR'S BALANCE SHEET.**

**B.  Overview of the Transactions Contemplated by the Plan.**

As of January 6, 2023, the Debtor had approximately $2.6 million in total debt obligations due to a paydown of the C&G Realty E, LLC ("C&G") mortgage from the homes built in Johnson County pursuant to the joint venture. The remaining 5 home sales have been approved by the Court, and it is anticipated that they will be closed prior to the Effective Date. If they have not, or the claim of C&G has not been fully paid, C&G shall participate in voting on this plan.

.As explained more fully in Article III of this Disclosure Statement, the Debtor anticipates that it will pay down a portion of its funded debt obligations with a replacement mortgage on the Jack County parcel. The remaining debts will be satisfied by the consummation of sales by the Debtor of portions of its real estate and note income to fully-satisfy the mortgage and current tax obligations secured by said properties.
.

To implement a comprehensive financial restructuring of its remaining funded debt, the Debtor  commenced a chapter 11 case (the "<u>Chapter 11 Case</u>") in the United States Bankruptcy Court for the Northern District of Texas Dallas Division (the "<u>Bankruptcy Court</u>

• each Holder of an Undisputed Secured Claim will paid 100% of their Allowed Claim which is still outstanding, if any, with interest pursuant to the terms of each such obligation.

• all unpaid Priority Tax Claims will receive post-confirmation interest at the rate of 5% per annum. The Estate will pay the Priority Tax Claims not satisfied in the previously court-approved real estate closings, within twelve (12) months of the Effective Date with interest at the rate of 5% per annum. The Estate will pay any and all post-petition sales and ad valorem taxes when due and in the ordinary course of business;

• all Administrative Claims and Other Secured Claims will be paid in full in Cash or receive such other treatment that renders such Claims unimpaired;

• each Holder of unliquidated secured claims will continue to hold secured status and thus their collateral, if any, and the amount of the secured portion of their claim, will need to be determined by agreement or the Court for purposes of allowance; and

As described below, you are receiving this Disclosure Statement because you are a Holder of a Claim or Interest entitled to vote to accept or reject the Plan. **Prior to voting on the Plan, you are encouraged to read this Disclosure Statement and all documents attached to this Disclosure Statement in their entirety. As reflected in this Disclosure Statement, there are risks, uncertainties, and other important factors that could cause the Debtor's actual performance or achievements to be materially different from those they may project, and the Debtor undertakes no obligation to update any such statement. Certain of these risks, uncertainties, and factors are described in Section VIII of this Disclosure Statement, entitled "Risk Factors."**

## C. Summary of the Plan.

The Plan organizes the Debtor's creditor and equity constituencies into groups called "Classes." For each Class, the Plan describes: (1) the underlying Claim or Interest; (2) the recovery available to the Holders of Claims or Interests in that Class under the Plan; (3) whether the Class is Impaired or Unimpaired under the Plan; (4) the form of consideration, if any, that Holders in such Class will receive on account of their respective Claims or Interests; and (5) whether the Holders of Claims and Interests in such Class are entitled to vote to accept or reject the Plan.

The proposed distributions and classifications under the Plan are based upon a number of factors, including the Debtor's valuation and liquidation analyses. The valuation of the Reorganized Debtor as a going concern is based upon the value of the Debtor's assets and liabilities as of an assumed Effective Date of March 30, 2023 or such date as is set at the confirmation hearing, and incorporates various assumptions and estimates, as discussed herein by the Debtor, after consultation with local builders in North Texas.

The table below provides a summary of the classification, description, and treatment of Claims and Interests under the Plan. This information is provided in summary form below for illustrative purposes only and is qualified in its entirety by reference to the provisions of the Plan. Any estimates of Claims or Interests in this Disclosure Statement may vary from the final amounts allowed by the Bankruptcy Court. Your ability to receive

distributions under the Plan depends upon the ability of the Debtor to obtain Confirmation and satisfy the conditions necessary to consummate the Plan.

when compared to the estimates provided below. To the extent that any inconsistency exists between the summaries contained in this Disclosure Statement and the Plan, the terms of the Plan shall govern.

For a more detailed description of the treatment of Claims and Interests under the Plan and the sources of satisfaction for Claims and Interests, see Section V of this Disclosure Statement, entitled "Summary of the Plan."

| Class | Claim or Interest | Status | Voting Rights | Projected Plan Recovery (%) |
|---|---|---|---|---|
| | Cavazos Hendricks Poirot P.C., Attorneys for Debtor | Adm. | | 100% of allowed claim |
| | United States Trustee Fees | Adm. | | 100% |
| | CPA | Adm. | | 100% of allowed claim |
| 1 | Parker CAD | S | | 100% of allowed claim |
| 2 | Jack County | S | | 100% |
| 3 | Johnson County | S | | 100% |
| 4 | Alvarado ISD | S | | 100% |
| 5 | C&G Realty E, LLC | S | | 100% of unpaid allowed claim |
| 6 | Leland B. Little | S | | 100% of unpaid allowed claim |
| 7 | | S | | 100% of |

|   |   |   |   |   |
|---|---|---|---|---|
|   | Pamela Diane Cunningham |   |   | unpaid allowed claim |
| 8 | Tri County Utilities | U |   | 100% |
| 9 | Joint Venture Obligation | U |   | 100%- in kind transfer |

**D. Voting on the Plan.**

All Holders of Claims and are entitled to vote on the Plan (the "<u>Voting Classes</u>"). Classes 1 through 9 which receive 100% payment in full are conclusively presumed to accept the Plan because they are Unimpaired by the Plan.

**<u>The Voting Deadline is 11:59 p.m., prevailing Central Time, on \*\*\*.</u>** To be counted as votes to accept or reject the Plan, each ballot (a "<u>Ballot</u>") must be properly executed, completed, and delivered (either by using the return envelope provided, by first class mail, overnight courier, personal delivery, or electronic submission) such that it is **actually received** before the Voting Deadline by \*\*\* (the "<u>Solicitation Agent</u>") as follows:

| DELIVERY OF BALLOTS |
| --- |
| 1. Ballots must be actually received by Debtor's Counsel before the Voting Deadline.<br><br>2. Ballots may be returned by the following methods: (a) in the enclosed pre-paid, pre-addressed return envelope; (b) via first class mail, overnight courier, or hand delivery to the address set forth below; or (c) ***.<br><br>*** <br>*** <br>*** <br>*** <br><br>If you have any questions on the procedures for voting on the Plan, please contact the Solicitation Agent by emailing*** |

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT. ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE VOTING INSTRUCTIONS WILL <u>NOT</u> BE COUNTED EXCEPT AS DETERMINED BY THE DEBTOR.**

## E. Confirmation and Consummation of the Plan.

Under section 1128(a) of the Bankruptcy Code, the Bankruptcy Court, after notice, may hold a hearing to confirm a plan of reorganization. When the Debtor files the Chapter 11 Case, it will file a motion seeking to set a date and time as soon as reasonably practicable for a preliminary approval of this Disclosure Statement and then a combined hearing to finally consider the Disclosure Statement along with the Plan (such hearing, the "Combined Hearing") for the Bankruptcy Court to determine whether the Disclosure Statement contains adequate information under section 1125(a) of the Bankruptcy Code and whether the Plan should be confirmed in light of both the affirmative requirements of the Bankruptcy Code and objections, if any, that are timely filed, as permitted by section 105(d)(2)(B)(vi) of the Bankruptcy Code. The Combined Hearing, once set, may be continued from time to time without further notice other than an adjournment announced in open court or a notice of adjournment filed with the Bankruptcy Court and served on those parties who have requested notice under Bankruptcy Rule 2002 and the individuals or entities who have filed an objection to the Plan, if any, without further notice to parties in interest. The Bankruptcy Court, in its discretion and prior to the Combined Hearing, may put in place additional procedures governing the Combined Hearing. Subject to section 1127 of the Bankruptcy Code, the Plan may be modified, if necessary, prior to, during, or as a result of the Combined Hearing, without further notice to parties in interest.

Additionally, Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation. The Debtor, in the same motion requesting a date for the Combined Hearing, will request that the Bankruptcy Court set a date and time for parties in interest to file objections to the adequacy of the Disclosure Statement, the Debtor's prepetition solicitation of acceptances in support of the Plan, and Confirmation of the Plan. All such objections must be filed with the Bankruptcy Court and served on the Debtor and certain other parties in interest in accordance with the applicable order of the Bankruptcy Court so that they are received before the deadline to file such objections.

    1.       **Combined Hearing.**

At the Combined Hearing, the Bankruptcy Court will determine whether the Disclosure Statement contains adequate information under section 1125(a) of the Bankruptcy Code, the Debtor's prepetition solicitation of acceptances in support of the Plan complied with section 1126(b) of the Bankruptcy Code, and the Plan should be confirmed in light of both the affirmative requirements of the Bankruptcy Code and objections, if any, that are timely filed..

    2.       **Effect of Confirmation and Consummation of the Plan.**

Following Confirmation, the Plan will be Consummated on the Effective Date. Among other things, on the Effective Date. Accordingly, it is important to read the provisions contained in the Plan very carefully so that you understand how Confirmation and Consummationwill affect you and any Claim or Interest you may hold with respect to the Debtor so that you may cast your vote accordingly. Debtor may file certain documents that provide more details about implementation of the Plan in a Plan Supplement, which will be filed with the Bankruptcy Court no later than seven (7) calendar days before the Confirmation Objection Deadline. The Debtor will serve a notice that will inform all parties that the initial Plan Supplement was filed, list the information included therein, and explain how copies of the Plan Supplement may be obtained. Eligible Holders of Claims and Interests entitled to vote to accept or reject the Plan shall not be entitled to change their vote based on the contents of the Plan Supplement after the Voting Deadline. The Plan Supplement will include the terms of the Debtor's refinancing of the Jack County mortgage and any other terms of clarification based on sales prior to the Confirmation Hearing.

> *THE FOREGOING EXECUTIVE SUMMARY IS ONLY A GENERAL OVERVIEW OF THIS DISCLOSURE STATEMENT AND THE MATERIAL TERMS OF, AND TRANSACTIONS PROPOSED BY, THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO, AND SHOULD BE READ IN CONJUNCTION WITH, THE MORE DETAILED DISCUSSIONS APPEARING ELSEWHERE IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED TO THIS DISCLOSURE STATEMENT, INCLUDING THE PLAN.*

### The Debtor's Business Operations and Capital Structure.

### F.  The Debtor's Corporate History.

The Debtor was originally formed by Andrea Vernon in May of 2017 as a land acquisition and development company. The initial goal was to identify land is sparcely developed areas and to hold on to most of the land for future use in the areas of dog rescue and horse rescue.  The owner's personal resources were used for the down payments and short- term servicing of the mortgages.  The long-term plan was two-fold.-(1) The majority of the land would be held for a period of time to reap the benefits of increases in value over time and increased demand for housing in the areas where the land is situated; and (2)  A small portion of the land was ultimately to be developed, in coordination with an experienced builder, for home construction and sales to provide funds to complete the payment of  the initial purchase-money private mortgages and any outstanding tax obligations associated with the real estate. The initial concept was that a selected builder would contribute labor and material for a home or homes, the Debtor would contribute the lot, and the sales proceeds would benefit the Debtor as they would be used to make lump sum paydowns on the mortgage for that land. In return for its up front capital contributions and later releases of mechanics' lien claims, the Debtor would deed a portion of the larger parcel to the builder and retain the rest as free and clear raw land.

### G.  The Debtor's Business Operations.

The Debtor itself does not directly "operate" yet. It has been holding real estate, developing single homes with builders, and selling them. For a few of the sales the Debtor has taken back a Note which generates monthly income. As to the rest of the individual lot sales, the Debtor has used the funds generated to pay down the purchase money mortgages. Ultimately, the Debtor's operations will consist of growing hay for its goats, possibly entering into grazing leases for income, and conducting dog and horse rescue on the remaining raw land.

### H.  The Jumba, LLC's Corporate Structure.

The Debtor is a single-member LLC, with the sole manager and member being Andrea Vernon.

### Events Leading to These Chapter 11 Cases.

The Debtor has been fortunate by making wise investments (as its land has significantly appreciated) and also by receiving accommodations from the former landowners who took back mortgages for portions of the land purchase prices and have accepted lump sum paydowns and granted extensions. Unfortunately, COVID, changes in the economy and real estate market, as a whole, significantly delayed development of homes that were slated to pay off the balance of the Debtor's debts.  Additionally, the failure of the Parker County appraiser to properly handle Debtor's timely agricultural exemption on the Parker County land, has resulted in higher

taxes on the Parker land and legal fees arising from a tax lawsuit served in July of 2022. While trying to get that issue resolved, the Debtor was also seeking an extension of maturity date on the Johnson County mortgage as the homes which were to be completed to pay off that obligation in 6 closings, had not been completed, some buyers were unable to close and property values had decreased in the area. Instead of granting an extension, to be funded by the guarantor on that loan, a Notice of Foreclosure was posted, forcing the Debtor to seek Chapter 11 Relief.

### The Debtor's Proposed Restructuring: Key Components.

The Debtor commenced this Chapter 11 Case to implement this restructuring through the Plan, a copy of which is attached to this Disclosure Statement as **Exhibit A**.

The Plan contemplates completion of the pending land sales to fully satisfy the tax and mortgage obligations on both the Johnson County and Parker County parcels and refinancing the remaining debt on the Jack County parcel to provide terms of repayment which will work for the Debtor.

- As sales are completed, all secured creditors will be paid in full once their payoffs have been reviewed and confirmed.

- all Administrative Claims, Priority Tax Claims, and Unsecured Claims will be paid in full in Cash.

- The Debtor shall obtain a new loan sufficient to pay Effective Date obligations as well as the Cunningham mortgage in connection with funds from the Debtor's sole member.

The Debtor has identified two lenders willing to provide the funding needed for the Plan's consummation. Due to the Debtor's income, the Debtor will need to go with a private lender in order to extend the repayment obligation without the high interest rates being offered by land banks.

### The Debtor's Proposed Disclosure Statement and Solicitation Process.

The Debtor will commence a solicitation of the Plan on_____, 2023, by delivering a copy of the Plan and this related Disclosure Statement (including Ballots) to Holders of Class 3, 4, 5, 6 and 7 claims, to the extent that they are entitled to vote to accept or reject the Plan at the time of balloting.. The Debtor has established _____, 2023 at 11:59 p.m., prevailing Central Time, as the deadline for the receipt of votes to accept or reject the Plan (the "Voting Deadline").

The Debtor will seek Bankruptcy Court approval of the Voting Deadline.  As soon as reasonably practicable after the Voting Deadline, the Solicitation Agent will file the Voting Report with the Bankruptcy Court setting forth the voting results. The Debtor believes that the Voting Report likely will show that the Holders of Claims and Interests entitled to vote on the

Plan have overwhelmingly voted to accept the Plan. The following table sets forth the timetable for the solicitation process and the anticipated Chapter 11 Cases.

| Proposed Solicitation and Confirmation Timeline | |
|---|---|
| Preliminary approval of Disclosure Statement | |
| Commencement of Solicitation | |
| | |
| Mailing of Combined Hearing Notice | One business day after entry of an order approving the Scheduling Motion. |
| Filing of Plan Supplement, if needed | |
| Confirmation Objection Deadline | |
| Voting Deadline | |
| Deadline to File Reply Brief | |
| Anticipated Combined Hearing Date | |

## II.    Summary of the Plan.

SECTION V OF THIS DISCLOSURE STATEMENT IS INTENDED ONLY TO PROVIDE A SUMMARY OF THE KEY TERMS, STRUCTURE, CLASSIFICATION, TREATMENT, AND IMPLEMENTATION OF THE PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE ENTIRE PLAN AND EXHIBITS TO THE PLAN. ALTHOUGH THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT INCLUDE SUMMARIES OF THE PROVISIONS CONTAINED IN THE PLAN AND IN DOCUMENTS REFERRED TO THEREIN, THIS DISCLOSURE STATEMENT DOES NOT PURPORT TO BE A PRECISE OR COMPLETE STATEMENT OF ALL RELATED TERMS AND PROVISIONS AND SHOULD NOT BE RELIED ON FOR A COMPREHENSIVE DISCUSSION OF THE PLAN. INSTEAD, REFERENCE IS MADE TO THE PLAN AND ALL SUCH DOCUMENTS FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS. THE PLAN ITSELF (INCLUDING ATTACHMENTS) AND THE PLAN SUPPLEMENT WILL CONTROL THE TREATMENT OF HOLDERS OF CLAIMS AND INTERESTS UNDER THE PLAN. TO THE EXTENT THERE ARE ANY INCONSISTENCIES BETWEEN THIS SECTION V AND THE PLAN (INCLUDING ANY ATTACHMENTS TO THE PLAN) AND THE PLAN SUPPLEMENT, THE PLAN AND PLAN SUPPLEMENT, AS APPLICABLE, SHALL GOVERN.

A.    Treatment of Unclassified Claims.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified and, thus, are excluded from the Classes of Claims set forth in Article III of the Plan.

### 1.   Administrative Claims.

Unless otherwise agreed to by the Holders of an Allowed Administrative Claim and the Debtor or the Reorganized Debtor, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses of professionals) shall either receive, in full and final satisfaction of its Administrative Claim, an amount of Cash equal to the amount of such Allowed Administrative Claim, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, in accordance with the following: (a) if an Administrative Claim is Allowed as of the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); or (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter.

### 2.   Professional Fee Claims.

#### (a)   Professional Fee Escrow Account.

On or prior to the Effective Date, the Debtor shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Such funds shall not be considered property of the Estate, the Debtor, or the Reorganized Debtor.

The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Debtor or the Reorganized Debtor, as applicable, from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtor's and the Reorganized Debtor's obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtor without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

#### (b)   Final Fee Applications and Payment of Professional Fee Claims.

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Reorganized Debtor shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals, including from funds held in the Professional Fee Escrow Account when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

### (c)      Professional Fee Escrow Amount.

The Professionals shall provide a reasonable and good-faith estimate of their fees and expenses incurred in rendering services to the Debtor before and as of the Effective Date projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtor no later than five days before the anticipated Effective Date; *provided*, *however*, that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtor may estimate a reasonable amount of unbilled fees and expenses of such Professional, taking into account any prior payments; *provided*, *however*, that such estimate shall not be binding or considered an admission with respect to the fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtor to determine the amount to be funded to the Professional Fee Escrow Account.

### (d)      Post-Confirmation Date Fees and Expenses.

From and after the Confirmation Date, the Debtor or Reorganized Debtor, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtor or the Reorganized Debtor, as applicable. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor and Reorganized Debtor, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

The Debtor and Reorganized Debtor, as applicable, shall pay, within ten (10) business days after submission of a detailed invoice to the Debtor or Reorganized Debtor, as applicable, such reasonable claims for compensation or reimbursement of expenses incurred by the retained Professionals of the Debtor or the Reorganized Debtor, as applicable. If the Debtor or Reorganized Debtor, as applicable, dispute the reasonableness of any such invoice, the Debtor or Reorganized Debtor, as applicable, or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved.

3.      **Priority Tax Claims.**

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall, either be paid in full in Cash, or otherwise be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

B.      **Classification of Claims and Interests.**

The Plan constitutes a separate Plan proposed by each Debtor, within the meaning of section 1121 of the Bankruptcy Code. Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The following chart represents the classification of Claims and Interests pursuant to the Plan:

| VOTING CLASSES | NAME OF CLASS UNDER THE PLAN |
|---|---|
| CLASS 1 | Parker County |
| CLASS 2 | Jack County |
| CLASS 3 | Johnson County |
| CLASS 4 | Alvarado ISD |
| CLASS 5 | C&G Realty E, LLC |
| CLASS 6 | Leland B. Little |
| CLASS 7 | Pamela Diane Cunningham |
| CLASS 8 | Tri County Utilities |
| CLASS 9 | Joint Venture Obligation |

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtor or the Reorganized Debtor, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

**C.    Means for Implementation of the Plan.**

**1.    General Settlement of Claims and Interests.**

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, their Estates, and Holders of Claims and Interests and is fair, equitable, and is within the range of reasonableness. Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

**(a)    Cash on Hand.**

The Debtor or Reorganized Debtor, as applicable, shall use Cash on hand to fund distributions to certain Holders of Claims, including the payment of Allowed General Unsecured Claims as set forth in Article III of the Plan.

New Common Stock and the New Warrants to be issued under the Plan (a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) subject to the terms of the New Shareholders Agreement, are freely tradable and transferable by any initial recipient thereof that (i) is not an "affiliate" of the Debtor as defined in   Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within ninety (90) days of such transfer, and (iii) is not an Entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

**2.    Corporate Existence.**

Except as otherwise provided in the Plan, the Plan Supplement the Debtor shall continue to exist after the Effective Date as single member limited liability company, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or

approval (other than any requisite filings required under applicable state, provincial, or federal law).

### 3.    Corporate Action.

On or before the Effective Date, as applicable, all actions contemplated under the Plan or the Plan Supplement shall be deemed authorized and approved in all respect.

### 4.    Vesting of Assets in the Reorganized Debtor.

Except as otherwise provided in the Plan or the Plan Supplement, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Debtor's Estate, all Causes of Action, and any property acquired by any of the Debtor under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances, and the Liens securing obligations on account of Other Secured Claims that are Reinstated pursuant to the Plan, if any).  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### 5.    Effectuating Documents; Further Transactions.

On and after the Effective Date, the Reorganized Debtor, and the officers and members of the boards of directors and managers thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan pursuant to the Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

### 6.    Exemption from Certain Taxes and Fees.

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other Interest in the Debtor or the Reorganized Debtor, (b) the Restructuring Transactions; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; (e) the grant of collateral as security for refinance of Cunningham Note, as applicable; or (f) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, in each case shall not be subject to any document recording tax, stamp

tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of  section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 7.    Preservation of Causes of Action.

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, including pursuant to Article VIII of the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date.

In accordance with section 1123(b)(3) of the Bankruptcy Code, any and all Causes of Action of the Debtor are  preserved, including any liable claims against Brenda Hurst and others posting to her Facebook group, and shall vest in the Reorganized Debtor. The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The applicable Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

### 8.    Release of Avoidance Actions.

On the Effective Date, the Debtor, on behalf of itself and its estate, shall release any and all Avoidance Actions, and the Debtor, the Reorganized Debtor, and any of their successors or assigns, and any Entity acting on behalf of the Debtor or the Reorganized Debtor shall be deemed to have waived the right to pursue any and all Avoidance Actions, except for Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtor.

### D.    Treatment of Executory Contracts and Unexpired Leases.

### 1.    Assumption of Executory Contracts and Unexpired Leases.

On the Effective Date, except as otherwise provided in the Plan or in any contract,

instrument, release, indenture, or other agreement or document entered into in connection with the Plan, all Executory Contracts and Unexpired Leases shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code, and regardless of whether such Executory Contract or Unexpired Lease is identified on the Assumed Executory Contract and Unexpired Lease List, unless such Executory Contract and Unexpired Lease: (a) was assumed or rejected previously by the Debtor;(b) previously expired or terminated pursuant to its own terms or  (c) is the subject of a motion to reject filed on or before the Effective Date.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumption, assumption and assignment, or rejection, as applicable, of such Executory Contracts or Unexpired Leases as set forth in the Plan, the Assumed Executory Contract and Unexpired Lease List, and the Rejected Executory Contract and Unexpired Leases List, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing  and  providing for its assumption under applicable federal law.

To the maximum extent permitted by law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

2.      **Insurance Policies.**

Each of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, the Debtor shall be deemed to have assumed all insurance policies, as well as any agreements, documents, and instruments relating to such insurance policies or coverage of all insured Claims.  Except as set forth in Article V.F of the Plan, nothing in the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any other order of the Bankruptcy Court (including any other provision that purports to be preemptory or supervening), (a) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (b) alters or modifies the duty, if any, that the insurers or third party administrators pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtor (or after the Effective Date, the Reorganized

Debtor) or draw on any collateral or security therefor. For the avoidance of doubt, insurers and third party administrators shall not need to nor be required to file or serve a cure objection or a request, application, claim, Proof of Claim, or motion for payment and shall not be subject to any claims bar date or similar deadline governing cure amounts or Claims.

3.        **Modifications, Amendments, Supplements, Restatements, or Other Agreements.**

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

4.        **Reservation of Rights.**

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtor or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtor or the Reorganized Debtor, as applicable, shall have  thirty (30) calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

5.        **Nonoccurrence of Effective Date.**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

6.        **Contracts and Leases Entered Into After the Petition Date.**

Contracts and leases entered into after the Petition Date by any Debtor and any Executory Contracts and Unexpired Leases assumed by any Debtor may be performed by the applicable Reorganized Debtor in the ordinary course of business.

E.        **Conditions Precedent to Confirmation and Consummation of the Plan.**

1. **Conditions Precedent to the Effective Date.**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article IX of the Plan:

- the Bankruptcy Court shall have entered the Confirmation Order, in form and substance reasonably acceptable to the Required Consenting Term Loan Lenders and the Term Loan Agent, and the Confirmation Order shall not be stayed, modified, or vacated and shall not be subject to any pending appeal, and the appeals period for the Confirmation Order shall have expired; *provided* that the requirement that the Confirmation Order not be subject to any pending appeal and the appeals period for the Confirmation Order shall have expired or have been waived by the Required Consenting Term Loan Lenders;

- the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein, and all other schedules, documents, supplements and exhibits to the Plan, shall have been filed and shall be in form and substance consistent with the approval rights set forth in the Restructuring Support Agreement.

2. **Substantial Consummation.**

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, with respect to any of the Debtor, shall be deemed to occur on the Effective Date with respect to such Debtor.

F. **Settlement, Release, Injunction, and Related Provisions.**

1. **Compromise and Settlement of Claims, Interests, and Controversies.**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtor may compromise and settle Claims against, and Interests in, the Debtor and their Estates and Causes of Action against other Entities.

**2.      Discharge of Claims and Termination of Interests.**

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Debtor Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtor), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtor before the Effective Date and that arise from a termination of employment, any contingent or noncontingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtor or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

**3.      Releases by the Debtor.**

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtor, the Reorganized Debtor, and the Estate from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtor, that the Debtor, the Reorganized Debtor, or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, or that any Holder of any Claim or Interest could have asserted on behalf of the Debtor, based on or relating to, or in any manner arising from, in whole or in part:

(a)      the Debtor, the Debtor's restructuring efforts, intercompany transactions, the formulation, preparation, dissemination negotiation, or filing of the Plan.

(b)      Any contract, instrument, release, or other agreement or document created or entered into in connection with the  Disclosure Statement, or the Plan.

(c)      the Chapter 11 Case, the Disclosure Statement, the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan; or

(d)      any other act or omission, transaction, agreement, event, or other occurrence, relating to any of the foregoing (a), (b), or (c), taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, or any document, instrument, or agreement executed to implement the Plan.

**4.**      Releases by Holders of Claims and Interests of the Debtor.

As of the Effective Date, each Releasing Party is deemed to have released and discharged the Debtor and Reorganized Debtor from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtor, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part:

(a)      the Debtor, the Debtor's restructuring efforts, intercompany transactions, the formulation, preparation, dissemination, negotiation, or filing of the Plan.

(b)      any transaction that is part of the Plan.

(c)      the Chapter 11 Case, the Disclosure Statement, the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement; or

(d)      any other act or omission, transaction, agreement, event, or other occurrence, in each case relating to any of the foregoing (a), (b), or (c), taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in any Definitive Documentation or other document or disclosure included with or contained in the Plan Supplement) executed to implement the Plan.

**5.**      Injunction.

Except as otherwise expressly provided in the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to the Plan, or shall be discharged pursuant to the Plan,  are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as

applicable, the Debtor, the Reorganized Debtor, or the Released Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests;enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

### 6.    Protection Against Discriminatory Treatment.

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Entity with which a Reorganized Debtor has been or is associated, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor, or another Entity with whom the Reorganized Debtor have been associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

### 7.    Recoupment.

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

### 8.    Reimbursement or Contribution.

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (a) such Claim has been adjudicated as noncontingent, or (b) the relevant Holder of a Claim

has filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

### 9. Term of Injunctions or Stays.

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### 10. Document Retention.

On and after the Effective Date, the Reorganized Debtor may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtor.

### III. Confirmation of the Plan

### A. The Combined Hearing.

At the Combined Hearing, the Bankruptcy Court will determine whether to approve the Disclosure Statement and whether the Plan should be confirmed in light of both the affirmative requirements of the Bankruptcy Code and objections, if any, that are timely filed. **The Combined Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Combined Hearing or the filing of a notice of such adjournment served in accordance with the order approving the Solicitation Procedures.**

### B. Deadline to Object to Approval of the Disclosure Statement and Confirmation of the Plan.

Upon commencement of the Chapter 11 Cases and scheduling of the Combined Hearing, the Debtor will provide notice of the Combined Hearing and, if approved by the Bankruptcy Court, the notice will provide that objections to the Disclosure Statement and Confirmation of the Plan must be filed and served at or before 5:00 p.m., prevailing Central Time, on _____. Unless objections to the Disclosure Statement or Confirmation of the Plan are timely served and filed, they may not be considered by the Bankruptcy Court.

### C. Requirements for Approval of the Disclosure Statement.

The prepetition solicitation of votes to accept or reject a chapter 11 plan must

comply with applicable federal or state securities laws and regulations (including the registration and disclosure requirements thereof) or, if such laws and regulations do not apply, provide "adequate information" under section 1125 of the Bankruptcy Code. At the Combined Hearing, the Debtor will seek a determination from the Bankruptcy Court that the Disclosure Statement satisfies sections 1125(g) and 1126(b) of the Bankruptcy Code.

**D.      Requirements for Confirmation of the Plan.**

**1.      Requirements of Section 1129(a) of the Bankruptcy Code.**

Among the requirements for Confirmation are the following: (a) the Plan is accepted by all Impaired Classes of Claims and Interests or, if the Plan is rejected by an Impaired Class, at least one Impaired Class of Claims or Interests has voted to accept the Plan and a determination that the Plan "does not discriminate unfairly" and is "fair and equitable" as to Holders of Claims or Interests in all rejecting Impaired Classes; (b) the Plan is feasible; and (c) the Plan is in the "best interests" of Holders of Impaired Claims and Interests.

At the Combined Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code. The Debtor believes that the Plan satisfies or will satisfy all of the necessary requirements of chapter 11 of the Bankruptcy Code. Specifically, in addition to other applicable requirements, the Debtor believes that the Plan satisfies or will satisfy the applicable requirements of section 1129 of the Bankruptcy Code set forth below.

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtor, as the Plan proponents, have complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, will be disclosed to the Bankruptcy Court, and any such payment (a) made before Confirmation will be reasonable or (b) will be subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after Confirmation.

- Either each Holder of an Impaired Claim against or Interest in the Debtor will accept the Plan, or each non-accepting Holder will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that the Holder would receive or retain if the Debtor were liquidated on that date under chapter 7 of the Bankruptcy Code.

- Except to the extent that the Holder of a particular Claim agrees to a different treatment of its Claim, the Plan provides that, to the extent an Allowed

Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases Allowed Administrative Claims will be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable.

- At least one Class of Impaired Claims will have accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class.

- Confirmation is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor or any successors thereto under the Plan.

- All fees of the type described in 28 U.S.C. § 1930, including the fees of the U.S. Trustee, will be paid as of the Effective Date.

Section 1126(c) of the Bankruptcy Code provides that a class of claims has accepted a plan of reorganization if such plan has been accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class. Section 1126(d) of the Bankruptcy Code provides that a class of interests has accepted a plan of reorganization if such plan has been accepted by holders of such interests that hold at least two-thirds in amount of the allowed interests of such class.

**2.      The Debtor Release, Releases by Holders of Claims and Interests of the Debtor, and Injunction Provisions.**

Article VIII of the Plan provides for releases of certain claims and Causes of Action the Debtor may hold against the Released Parties. The Released Parties are, collectively, and in each case in such Party's capacity as such the Debtor and the Reorganized Debtor, its agents and members.

Article VIII of the Plan provides for releases of certain claims and Causes of Action that Holders of Claims or Interests may hold against the Released Parties in exchange for the good and valuable consideration and the valuable compromises made by the Released Parties. The Holders of Claims and Interests who are releasing certain claims and Causes of Action against non-Debtor are, collectively, and in each case in such Holder's capacity as such: (a) the Debtor and the Reorganized Debtor, it's current and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors (with respect to clause, each solely in their capacity as such.

Article VIII of the Plan permanently enjoins Entities who have held, hold, or may hold Claims, Interests, or Liens that have been discharged or released pursuant to the Plan from asserting such Claims, Interests, or Liens against each Debtor, the Reorganized Debtor, and the Released Parties.

Under applicable law, a debtor release of the Released Parties is appropriate where: (a) there is an identity of interest between the debtor and the third party, such that a suit against the released non-debtor party is, at core, a suit against the debtor or will deplete assets of the estate; (b) there is a substantial contribution by the non-debtor of assets to the reorganization; (c) the injunction is essential to the reorganization; (d) there is overwhelming creditor support for the injunction; and (e) the chapter 11 plan will pay all or substantially all of the claims affected by the injunction. *In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013). Importantly, these factors are "neither exclusive nor are they a list of conjunctive requirements," but "[i]nstead, they are helpful in weighing the equities of the particular case after a fact-specific review." *Id.* Further, a chapter 11 plan may provide for a release of third party claims against non-debtor where such releases are consensual. *Id.* at 304–06. In addition, exculpation is appropriate where it applies to estate fiduciaries. *Id.* at 306. Finally, an injunction is appropriate where it is necessary to the reorganization and fair pursuant to section 105(a) of the Bankruptcy Code. *In re W.R. Grace & Co.*, 475 B.R. 34, 107 (D. Del. 2012). In addition, approval of the releases, exculpations, and injunctions for each Released Party and each Exculpated Party as part of Confirmation of the Plan will be limited to the extent such releases, exculpations, and injunctions are permitted by applicable law.

The Debtor believes that the releases, and injunctions set forth in the Plan are appropriate because, among other things, the releases are narrowly tailored to the Debtor's restructuring process, and each of the Released Parties has contributed value to the Debtor and aided in the reorganization process, which facilitated the Debtor's ability to propose and pursue confirmation of the Plan. The Debtor believes that each of the Released Parties has played an integral role in formulating the Plan and has expended significant time and resources analyzing and negotiating the issues presented by the Debtor's prepetition capital structure. The Debtor further believes that such releases, exculpations, and injunctions are a necessary part of the Plan, including by allowing General Unsecured Claims to remain Unimpaired and ride through this Chapter 11 Case and reducing the Debtor's leverage and interest burden. In addition, the Debtor believes the releases by Holders of Claims and Interests are entirely consensual under the established case law in the United States Bankruptcy Court for the District of Delaware. *See Indianapolis Downs*, 486 B.R. at 304– 06. The Debtor will be prepared to meet their burden to establish the bases for the releases, exculpations, and injunctions for each of the Released Parties and each Exculpated Party as part of Confirmation of the Plan.

### 3.      Feasibility/Financial Projections.

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a chapter 11 plan of reorganization is not likely to be followed by the liquidation of the reorganized debtor or the need for further financial reorganization of the debtor, or any successor to the debtor (unless such liquidation or reorganization is proposed in the chapter 11 plan). For purposes of determining whether the Plan meets this requirement, the Debtor have analyzed their ability to meet their obligations under the Plan.

### 4.      Best Interests of Creditors—Liquidation Analysis.

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each class, that each holder of a claim or an interest in such class either (a) has accepted the plan or (b) will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor liquidated under chapter 7 of the Bankruptcy Code.

To demonstrate compliance with the "best interests" test, the Debtor, with the assistance of their Advisors, prepared the Liquidation Analysis, attached hereto as **Exhibit A**.

### 5.      Acceptance by Impaired Classes.

The Bankruptcy Code requires that, except as described in the following section, each impaired class of claims or interests must accept a plan in order for it to be confirmed. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to the class is not required. A class is "impaired" unless the plan: (a) leaves unaltered the legal, equitable, and contractual rights to which the claim or the interest entitles the holder of the claim or interest; (b) cures any default, reinstates the original terms of such obligation, compensates the holder for certain damages or losses, as applicable, and does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest; or
(c) provides that, on the consummation date, the holder of such claim receives cash equal to the allowed amount of that claim or, with respect to any equity interest, the holder of such interest receives value equal to the greater of
(i) any fixed liquidation preference to which the holder of such equity interest is entitled,
(ii) the fixed redemption price to which such holder is entitled, or (iii) the value of the interest.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in that class, counting only those claims that actually voted to accept or to reject the plan. Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number of creditors actually voting cast their ballots in favor of acceptance. For a class of impaired interests to accept a plan, section 1126(d) of the Bankruptcy Code requires acceptance by interest holders that hold at least two-thirds in amount of the allowed interests of such class, counting only those interests that actually voted to accept or reject the plan. Thus, a class of interests will have voted to accept the plan only if two-thirds in amount actually voting cast their ballots in favor of acceptance.

**6.      Confirmation Without Acceptance by All Impaired Classes.**

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if all impaired classes have not accepted the plan, provided that the plan has been accepted by at least one impaired class of claims. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class rejection or deemed rejection of the plan, the plan will be confirmed, at the plan proponent's request, in a procedure commonly known as "cramdown," so long as the plan does not "discriminately unfairly" and is "fair and equitable" with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

If any Impaired Class of Claims or Interests rejects the Plan, including Classes of Claims or Interests deemed to reject the Plan, the Debtor will request Confirmation of the Plan, as it may be modified from time to time, utilizing the "cramdown" provision under section 1129(b) of the Bankruptcy Code. The Debtor reserve the right to modify the Plan in accordance with Article I and X of the Plan to  the  extent,  if any,  that  Confirmation pursuant to  section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules or to withdraw the Plan as to such Debtor.

The Debtor believes that the Plan and the treatment of all Classes of Claims and Interests under the Plan satisfy the requirements for cramdown and the Debtor will be prepared to meet their burden to establish that the Plan can be Confirmed pursuant to section 1129(b) of the Bankruptcy Code as part of Confirmation of the Plan.

**(a)      No Unfair Discrimination.**

The "unfair discrimination" test applies with respect to classes of claim or interests that are of equal priority but are receiving different treatment under a proposed plan. The test does not require that the treatment be the same or equivalent, but that the treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (*e.g.*, classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly. Under certain circumstances, a proposed plan may treat two classes of unsecured creditors differently without unfairly discriminating against either class.

With respect to the unfair discrimination requirement, all Classes under the Plan are provided treatment that is substantially equivalent to the treatment that is provided to other Classes that have equal rank. Accordingly, the Debtor believes that the Plan meets the standard to demonstrate that the Plan does not unfairly discriminate and the Debtor will be prepared to meet their burden to establish that there is no unfair discrimination as part of Confirmation of the Plan.

**(b)      Fair and Equitable Test.**

The "fair and equitable" test applies to classes of different priority and status (*e.g.*,

secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class.  As to each non-accepting class and as set forth below, the test sets different standards depending on the type of claims or interests in such class. The Debtor believes that the Plan satisfies the "fair and equitable" requirement, notwithstanding the fact that certain Classes are deemed to reject the Plan. There is no Class receiving more than a 100% recovery and no junior Class is receiving a distribution under the Plan until all senior Classes have received a 100% recovery or agreed to receive a different treatment under the Plan.

### (i)      Secured Claims.

The condition that a plan be "fair and equitable" to a non-accepting class of secured claims includes the requirements that: (A) the holders of such secured claims retain the liens securing such claims to the extent of the allowed amount of the claims, whether the property subject to the liens is retained by the debtor or transferred to another entity under the plan; and (B) each holder of a secured claim in the class receives deferred cash payments totaling at least the allowed amount of such claim with a value, as of the effective date, at least equivalent to the value of the secured claimant's interest in the debtor's property subject to the claimant's liens.

### (ii)      Unsecured Claims.

The condition that a plan be "fair and equitable" to a non-accepting class of unsecured claims includes the requirement that either:  (A) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date, equal to the allowed amount of such claim; or (B) the holder of any claim or any interest that is junior to the claims of such class will not receive or retain any property under the plan on account of such junior claim or junior interest, subject to certain exceptions.

### (iii)      Interests.

The condition that a plan be "fair and equitable" to a non-accepting class of interests, includes the requirements that either: (A) the plan provides that each holder of an interest in that class receives or retains under the plan on account of that interest property of a value, as of the effective date, equal to the greater of:  (1) the allowed amount of any fixed liquidation preference to which such holder is entitled; (2) any fixed redemption price to which such holder is entitled; or (3) the value of such interest; or (B) the holder of any interest that is junior to the interests of such class will not receive or retain any property under the plan on account of such junior interest.

**IV.**   **Voting Instructions**

**A.**    **Overview.**

  Holders of Claims and Interests entitled to vote should carefully read the below voting instructions.

**B.**    **Solicitation Procedures.**

  **1.**    **Solicitation Agent.**

  The Debtor shall serve as the Solicitation Agent in connection with the solicitation of votes to accept or reject the Plan. The Solicitation Agent will process and tabulate Ballots for each Class entitled to vote to accept or reject the Plan and will file the Voting Report as soon as practicable after the Voting Deadline.

  **2.**    **Solicitation Package.**

  The following materials constitute the solicitation package (the "Solicitation Package") distributed to Holders of Claims and Interests in the Voting Classes:

- the Debtor's cover letter in support of the Plan;

- the appropriate Ballot and applicable voting instructions, together with a pre-addressed, postage pre-paid return envelope;

- a form of Combined Hearing Notice; and

- this Disclosure Statement and all exhibits hereto, including the Plan and all exhibits thereto (which may be distributed in paper or USB-flash drive format).

  **3.**    **Voting Deadline.**

  The period during which Ballots with respect to the Plan will be accepted by the Debtor will terminate at **11:59 p.m. \*\*\***, unless the Debtor extend the date until which Ballots will be accepted. Except to the extent that the Debtor so determine or as permitted by the Bankruptcy Court, Ballots that are received after the Voting Deadline will not be counted or otherwise used by the Debtor in connection with the Debtor's request for Confirmation of the Plan (or any permitted modification thereof).

  The Debtor reserve the right, at any time or from time to time, to extend the period of time (on a daily basis, if necessary) during which Ballots will be accepted for any reason, including determining whether or not the requisite number of acceptances have been received, by making a public announcement of such extension no later than the first Business Day next succeeding the previously announced Voting Deadline. The Debtor will give notice of any such extension in a manner deemed reasonable to the Debtor in their discretion.  There can be no assurance that the Debtor will exercise its right to extend the

Voting Deadline.

### 4.        Distribution of the Solicitation Package and Plan Supplement.

The Debtor will cause the Solicitation Agent to distribute the Solicitation Package to Holders of Claims and Interests in the Voting Classes on ***, which is 31 days before the Voting Deadline.

The Solicitation Package (except the Ballots) may also be obtained from the Solicitation Agent by: (a) calling the Debtor's restructuring hotline at ***, and asking for the solicitation group; (b) emailing ***; or (c) ***. When the Debtor files the Chapter 11 Cases, you may also obtain copies of any pleadings filed with the Bankruptcy Court for free by ***.

The Debtor will file the Plan Supplement in accordance with the terms of the Plan. As the Plan Supplement is updated or otherwise modified, such modified or updated documents will be made available on the Debtor's restructuring website. The Debtor will not serve paper or CD-ROM copies of the Plan Supplement; however, parties may obtain a copy of the Plan Supplement at no cost from the Solicitation Agent by: (a) calling the Solicitation Agent at one of the telephone numbers set forth above; (b) visiting the Debtor's restructuring website, https://cases.stretto.com/The Jumba; or (c) emailing the Solicitation Agent at the email address set forth above.

### C.        Voting Procedures.

The voting record date is ***, (the "Voting Record Date"), which date was used for to determine which Holders of Claims and Interests are entitled to vote to accept or reject the Plan and receive the Solicitation Package in accordance with the solicitation procedures. Except as otherwise set forth herein, the Voting Record Date and all of the Debtor's solicitation and voting procedures shall apply to all of the Debtor's creditors and other parties in interest.

In order for the Holder of a Claim or Interest in the Voting Classes to have such Holder's Ballot counted as a vote to accept or reject the Plan, such Holder's Ballot must be properly completed, executed, and delivered by:
(a) using the enclosed pre-paid, pre-addressed return envelope; (b) via first-class mail, overnight courier, or hand delivery to the Solicitation Agent ***; or (c) via electronic submission through the Solicitation Agent's online voting portal at ****, so that such Holder's Ballot is **actually received** by the Solicitation Agent before the Voting Deadline.

IF A BALLOT IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED UNLESS THE DEBTOR DETERMINE OTHERWISE.

ANY BALLOT THAT IS PROPERLY EXECUTED BY THE HOLDER OF A CLAIM OR INTEREST BUT THAT DOES NOT CLEARLY INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN OR ANY BALLOT THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN WILL

NOT BE COUNTED FOR PURPOSES OF ACCEPTING OR REJECTING THE PLAN.

EACH HOLDER OF A CLAIM OR INTEREST MUST VOTE ALL OF ITS CLAIMS OR INTERESTS WITHIN A PARTICULAR CLASS EITHER TO ACCEPT OR REJECT THE PLAN AND MAY NOT SPLIT SUCH VOTES. BY SIGNING AND RETURNING A BALLOT, EACH HOLDER OF A CLAIM OR INTEREST WILL CERTIFY TO THE BANKRUPTCY COURT AND THE DEBTOR THAT NO OTHER BALLOTS WITH RESPECT TO SUCH CLAIM OR INTEREST HAVE BEEN CAST OR, IF ANY OTHER BALLOTS HAVE BEEN CAST WITH RESPECT TO SUCH CLASS OF CLAIMS OR INTERESTS, SUCH OTHER BALLOTS INDICATED THE SAME VOTE TO ACCEPT OR REJECT THE PLAN. IF A HOLDER CASTS MULTIPLE BALLOTS WITH RESPECT TO THE SAME CLASS OF CLAIMS OR INTERESTS AND THOSE BALLOTS ARE IN CONFLICT WITH EACH OTHER, SUCH BALLOTS WILL NOT BE COUNTED FOR PURPOSES OF ACCEPTING OR REJECTING THE PLAN.

IT IS IMPORTANT THAT THE HOLDER OF A CLAIM OR INTEREST IN THE VOTING CLASSES FOLLOWS THE SPECIFIC INSTRUCTIONS PROVIDED ON SUCH HOLDER'S BALLOT.

D.      **Voting Tabulation.**

A Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of a Claim. Only Holders of Claims and Interests in the Voting Classes shall be entitled to vote with regard to such Claims and Interests.

Unless the Debtor decide otherwise, Ballots received after the Voting Deadline may not be counted. A Ballot will be deemed delivered only when the Solicitation Agent actually receives the executed Ballot as instructed in the applicable voting instructions. No Ballot should be sent to the Debtor, the Debtor's agents (other than the Solicitation Agent), or the Debtor's financial or legal advisors.

The Bankruptcy Code may require the Debtor to disseminate additional solicitation materials if the Debtor make material changes to the terms of the Plan or if the Debtor waive a material condition to confirmation of the Plan. In that event, the solicitation will be extended to the extent directed by the Bankruptcy Court.

To the extent there are multiple Claims or Interests within Voting Classes, the Debtor may, in their discretion, and to the extent possible, aggregate the Claims or Interests of any particular Holder within a Voting Class for the purpose of counting votes.

In the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Bankruptcy Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected.

The following Ballots will not be counted in determining the acceptance or rejection

of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim or Interest; (b) any Ballot that is not actually received by the Solicitation Agent by the Voting Deadline (unless the Debtor determine otherwise or as permitted by the Court); (c) any unsigned Ballot; (d) any Ballot that partially rejects and partially accepts the Plan; (e) any Ballot superseded by a later, timely submitted valid Ballot; (f) any improperly submitted Ballot, or any form of ballot other than the official form of Ballot sent by the Solicitation Agent (unless the Debtor determine otherwise or as permitted by the Court); and (g) any Ballot cast by a person or entity that does not hold a Claim or Interest in a Class that is entitled to vote on the Plan.

As soon as reasonably practicable after the Voting Deadline, the Solicitation Agent will file the Voting Report with the Bankruptcy Court. The Voting Report shall, among other things, delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity (each, an "Irregular Ballot"), including those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or lacking necessary information, or damaged. The Solicitation Agent will attempt to reconcile the amount of any Claim or Interest reported on a Ballot with the Debtor's records, but in the event such amount cannot be timely reconciled without undue effort on the part of the Solicitation Agent, the amount shown in the Debtor's records shall govern. The Voting Report also shall indicate the Debtor's intentions with regard to such Irregular Ballots. Neither the Debtor nor any other Person or Entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report, nor will any of them incur any liability for failure to provide such notification.

## V.      Risk Factors

**BEFORE TAKING ANY ACTION WITH RESPECT TO THE PLAN, HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTOR WHO ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN SHOULD READ AND CONSIDER CAREFULLY THE RISK FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, THE PLAN, AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH, REFERRED TO, OR INCORPORATED BY REFERENCE INTO THIS DISCLOSURE STATEMENT, INCLUDING OTHER DOCUMENTS FILED WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES. THE RISK FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS PRESENT IN CONNECTION WITH THE DEBTOR'S BUSINESSES OR THE RESTRUCTURING AND CONSUMMATION OF THE PLAN. EACH OF THE RISK FACTORS DISCUSSED IN THIS DISCLOSURE STATEMENT MAY APPLY EQUALLY TO THE DEBTOR AND THE REORGANIZED DEBTOR, AS APPLICABLE AND AS CONTEXT REQUIRES.**

**A.      Miscellaneous Risk Factors and Disclaimers.**

1.     **The Financial Information Is Based on the Debtor's Books and Records and, Unless Otherwise Stated, No Audit Was Performed.**

In preparing this Disclosure Statement, the Debtor relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtor have used their reasonable business judgment to assure the accuracy of the financial information provided in this Disclosure Statement, and while the Debtor believes that such financial information fairly reflects their financial condition, the Debtor are unable to warrant or represent that the financial information contained in this Disclosure Statement (or any information in any of the exhibits to the Disclosure Statement) is without inaccuracies.

2.     **No Legal or Tax Advice Is Provided By This Disclosure Statement.**

This Disclosure Statement is not legal advice to any person or Entity. The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each reader should consult its own legal counsel and accountant with regard to any legal, tax, and other matters concerning its Claim. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote to accept or reject the Plan or whether to object to Confirmation.

3.     **No Admissions Made.**

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity (including the Debtor) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtor, the Reorganized Debtor, Holders of Allowed Claims or Interests, or any other parties in interest.

4.     **Failure to Identify Litigation Claims or Projected Objections.**

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim is, or is not, identified in this Disclosure Statement. The Debtor may seek to investigate, file, and prosecute Claims and may object to Claims after Confirmation and Consummation of the Plan, irrespective of whether this Disclosure Statement identifies such Claims or objections to Claims.

5.     **Information Was Provided by the Debtor and Was Relied Upon by the Debtor's Advisors.**

Counsel to and other advisors retained by the Debtor have relied upon information provided by the Debtor in connection with the preparation of this Disclosure Statement. Although counsel to and other advisors retained by the Debtor have performed certain limited due diligence in connection with the preparation of this Disclosure Statement and the exhibits to the Disclosure Statement, they have not independently verified the information contained in this Disclosure Statement or the information in the exhibits to the Disclosure Statement.

**6.     No Representations Outside This Disclosure Statement Are Authorized.**

No representations concerning or relating to the Debtor, the Chapter 11 Cases, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure voting Holders' acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement, should not be relied upon by voting Holders in arriving at their decision. Holders of Claims and Interests in Voting Classes should promptly report unauthorized representations or inducements to counsel to the Debtor and the Office of the United States Trustee for the District of Delaware.

## VI.     <u>Important Securities Laws Disclosures</u>

**A.     Plan Consideration.**

The Plan provides for the Reorganized Debtor to pay 100 percent on all claims.

## VII.     <u>Certain U.S. Federal Tax Consequences of the Plan.</u>

**A.     Introduction.**

The following discussion is a summary of certain U.S. federal income tax consequences of the consummation of the Plan to the Debtor, the Reorganized Debtor, and to certain Holders of Claims and Interests. The following summary does not address the U.S. federal income tax consequences to Holders of Claims or Interests not entitled to vote to accept or reject the Plan. This summary is based on the U.S. Internal Revenue Code of 1986, as amended ("<u>IRC</u>"), the U.S. Treasury Regulations promulgated thereunder (the "<u>Treasury Regulations</u>"), judicial authorities, published administrative positions of the U.S. Internal Revenue Service (the "<u>IRS</u>"), and other applicable authorities (collectively, "<u>Applicable Tax Law</u>"), all as in effect on the date of this Disclosure Statement and all of which are subject to change or differing interpretations, possibly with retroactive effect. Due to the lack of definitive judicial and administrative authority in a number of areas, substantial uncertainty may exist with respect to some of the tax consequences described below. No opinion of counsel has been obtained and the Debtor do not intend to seek a ruling from the IRS as to any of the tax consequences of the Plan discussed below. The discussion below is not binding upon the IRS or the courts. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position than any position discussed herein.

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtor or to certain Holders of Claims or Interests in light of their individual circumstances. This discussion does not address tax issues with

respect to such Holders of Claims or Interests subject to special treatment under the U.S. federal income tax laws (including, for example, banks, governmental authorities or agencies, pass-through entities, beneficial owners of pass-through entities, subchapter S corporations, dealers and traders in securities, insurance companies, financial institutions, tax-exempt organizations, controlled foreign corporations, passive foreign investment companies, small business investment companies, foreign taxpayers, Persons who are related to the Debtor within the meaning of the IRC, Persons using a mark-to-market method of accounting, Holders of Claims or Interests who are themselves in bankruptcy, and regulated investment companies and those holding, or who will hold, Claims, the New Common Stock, the New Warrants, or the Take-Back Term Loan, as part of a hedge, straddle, conversion, or other integrated transaction). No aspect of state, local, estate, gift, or non-U.S. taxation is addressed. Furthermore, this summary assumes that a Holder of a Claim or Interest holds only Claims in a single Class and holds Claims or Interests as "capital assets" (within the meaning of section 1221 of the IRC). This discussion does not address special considerations that may apply to persons who are both Holders of Claims and Interests Holders. This summary also assumes that the various debt and other arrangements to which the Debtor and Reorganized Debtor are or will be a party will be respected for U.S. federal income tax purposes in accordance with their form, and that the Claims constitute interests in the Debtor "solely as a creditor" for purposes of section 897 of the IRC. This summary does not discuss differences in tax consequences to Holders of Claims that act or receive consideration in a capacity other than any other Holder of a Claim of the same Class or Classes, and the tax consequences for such Holders may differ materially from that described below.  This summary does not address the U.S. federal income tax consequences to Holders (a) whose Claims are Unimpaired or otherwise entitled to payment in full in Cash under the Plan, or (b) that are deemed to reject the Plan.

For purposes of this discussion, a "U.S. Holder" is a Holder that for U.S. federal income tax purposes        is: (1) an individual citizen or resident of the United States; (2) a corporation created or organized under the laws of the United States, any state thereof or the District of Columbia; (3) an estate the income of which is subject to U.S. federal income taxation regardless of the source of such income; or (4) a trust (a) if a court within the United States is able to exercise primary jurisdiction over the trust's administration and one or more United States persons (within the meaning of section 7701(a)(30) of the IRC) has authority to control all substantial decisions of the trust or (b) that has a valid election in effect under applicable Treasury Regulations to be treated as a United States person (within the meaning of section 7701(a)(30) of the IRC). For purposes of this discussion, a "Non-U.S. Holder" is any Holder that is not a U.S. Holder or a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes).

If a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes) is a Holder, the tax treatment of a partner (or other beneficial owner) generally will depend upon the status of the partner (or other beneficial owner) and the activities of the partner (or other beneficial owner) and the entity.  Partners (or other beneficial owners) of partnerships (or other pass-through entities) that are Holders are urged to consult their respective tax advisors regarding the U.S. federal income tax

consequences of the Plan.

**ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM OR INTEREST. ALL HOLDERS OF CLAIMS OR INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL, AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.**

## VIII.     <u>Recommendation of the Debtor</u>.

In the opinion of the Debtor, the Plan is preferable to the alternatives described in this Disclosure Statement because it provides for a larger distribution to Holders of Allowed Claims and Interests than would otherwise result in a liquidation under chapter 11 of the Bankruptcy Code. In addition, any alternative other than Confirmation could result in extensive delays and increased administrative expenses resulting in smaller distributions to Holders of Allowed Claims than proposed under the Plan. Accordingly, the Debtor recommends that Holders of Claims and Interests entitled to vote to accept or reject the Plan support Confirmation and vote to accept the Plan.

The Jumba, LLC,


By: _/s/Andrea Vernon_

Sole Manager and Member

Lyndel Anne Vargas
State Bar No. 24058913
Christopher J. Volkmer
State Bar No. 20607800
CAVAZOS HENDRICKS POIROT, P.C.
Suite 570, Founders Square
900 Jackson Street
Dallas, TX 75202
Phone: (214) 573-7344
Fax: (214) 573-7399
Email: LVargas@chfirm.com

Attorneys for the Debtor-In-Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| | § | |
| THE JUMBA, LLC, | § | Case No. 22-31740-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |

## PLAN OF REORGANIZATION

This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of The Jumba, LLC (the "Debtor"), and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that the Plan includes a list of definitions and a section of frequently asked questions.

Your rights may be affected by this Plan of Reorganization. You should consider discussing this document with an attorney.

COMES NOW, The Jumba, LLC, Debtor-in-Possession ("Jumba" or "Debtor") and proposes the following Plan of Reorganization (the "Plan"). The Plan proposes segregation of the Creditors and Equity Holders of Jumba into five (5) different classes. The Plan will be funded by the operations income arising from the anticipated construction and sale of additional homes, as well as the sale of same acreage.

## ARTICLE 1
## DEFINITIONS

The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The

definitions that follow that are found in the Code are for convenience of reference only and are superseded by the definitions found in the Code.

1. **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

2. **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including any actual and necessary expenses of Jumba's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor, and allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Debtor under Chapter 123, Title 28, United States Code.

3. **Allowed Claim**: Any claim against the Debtor to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and as to which either (i) a party in interest, including the Debtor, does not file an objection, or (ii) is allowed by a Final Order, or (b) the Claim was scheduled by the Debtor and not listed as disputed, contingent or unliquidated. Allowed Claim includes all Claims deemed unsecured pursuant to § 506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of § 506(b) of the Code shall also apply.

4. **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor shall be entitled on the Confirmation Date.

5. **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate to the extent allowed as secured claims under § 506 of the Code.

6. **Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

7. **Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

8. **Bankruptcy Court** or **Court**: The United States Bankruptcy Court for the Northern District of Texas, Dallas Division or such other court in which this Case may be pending.

9. **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

10. **Case**: The above-captioned bankruptcy case under Chapter 11 of the Bankruptcy Code in which The Jumba, LLC is the Debtor-in-Possession.

11. **Claim**: Any obligation or potential obligation of the Debtor including any claim within the definition of §§ 101(5) or 102(2) of the Code and any obligation of the Debtor which is entitled to payment pursuant to §§ 503, 507, or 1129 of the Code.

12. **Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

13. **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

14. **Confirmation Date**: The Date upon which the Bankruptcy Court enters the Confirmation Order.

15. **Confirmation Hearing**: The hearing to be held in February of 2023 to consider confirmation of the Plan pursuant to § 1128 of the Code. A separate Notice of Confirmation Hearing will be filed by Debtor's Counsel.

16. **Confirmation Order**: The order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

17. **Creditor**: Any person who has a Claim against The Jumba, LLC that arose on or before the Petition Date.

18. **Debtor:** The Jumba, LLC.

19. **Disputed Claim**: Any claim against The Jumba, LLC pursuant to § 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

20. **Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

21. **Effective Date**: The first calendar day after sixty (60) days after the Final Confirmation Date.

22. **Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

23. **Final Confirmation Date**: The first calendar day after the Confirmation Order becomes final and non-appealable.

24. **Petition Date**: September 23, 2022, the date the Chapter 11 petition for relief was filed.

25. **Plan**: This Plan of Reorganization, either in its present form or as it may be altered, amended, or modified from time to time.

26. **Plan Proponent**: The Jumba, LLC, Debtor-in-Possession has filed this Plan.

27. **Priority Tax Claim**: Any Claim entitled to priority in payment under § 507(a)(8) of the Code.

28. **Reorganized Debtor**: The Debtor after the Effective Date.

29. **Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

30. **Secured Creditor**: Any Creditor that holds a Claim that was properly secured by property of the Debtor as of the Petition Date and remains unpaid on the effective date of the plan.

31. **Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim, including, (i) the portion of any Claim secured by property of the Debtor to the extent such Claims is not a Secured Claim, if the holder of such Claim has not properly elected to be treated as a fully secured creditor pursuant to 1111(b) of the Code, and (ii) Claims arising from guaranties, indemnities, and similar obligations.

## ARTICLE 2
## BACKGROUND OF THE DEBTOR

### 2.1 The Debtor's Pre-Petition Business Operations

The Debtor was formed in May of 2017 to acquire land for speculation, some for future development, and some to retain as raw land.

### 2.2 Filing of the Debtor's Chapter 11 Petition and Post-Petition Operations

The Debtor filed its voluntary petition under Chapter 11 on September 23, 2022.  The Debtor has moved forward under its prepetition Joint Venture Agreement with Kairos Country Homes, LLC ("Kairos") to develop some 10-acre homesteads along the roadside  of its Johnson County, Texas property so that it could pay the mortgage obligation for that property and keep the remaining land, aside from the acres for Kairos, for agricultural use.

### 2.3 All Sources of the Debtor's Income

The sole income that that Debtor has are a couple of secured promissory notes. The other income has been the Debtor's lot value contributed to the joint venture' home construction and paydowns of its lenders in Johnson County.

### 2.4 Past and Projected Income and Expenses

A. <u>Past Income of The Jumba, LLC</u>

In the past the Debtor has generated some income from the sale of lots, either directly or in connection with development of a home on a lot with the assistance of a builder. Such income, however, has been used to pay taxes aan pay down the Debtor's mortgages in Parker and Jack Counties.

B. <u>Projected Income and Expenses from Land and House Sales</u>

The Debtor projects income of approximately $302,000 from the sale of 10.75 acres of its land in Parker County. The Option Fee has been paid directly to the assessor's office per the Option Contract with Vista Homes, LLC. This sale income will cover the mortgage obligation on the Parker County Property and any additional real estate taxes.

The other projected income will come from the refinancing of the raw land in Jack County to pay the mortgage balance and generate sufficient funds to pay all outstanding utility and insurance bills, if any, and the admininstrative expenses of this Estate.

## 2.5 Significant Events During the Bankruptcy Case

1.      The Debtor-In-Possession employed Cavazos Hendricks Poirot, P.C. as Counsel [Docket No. 34].

2.      An accountant, Ms. Mahdu Ahudja, has also been engaged as Debtor's accountant to file 2022 and 2023 tax returns. [ Docket No.      ].

3.      Thus far over $1.4 million has been paid to reduce the matured mortgage obligations to C&G Realty E, LLC to avoid the accrual of default interest on the full obligation of approximately $3.4million. The Bankruptcy Court has authorized the sale of the remaining 5 homes on the Johnson County Property to satisfy that obligation.

4.      The Debtor received an Option Contract which entailed an Option Fee sufficient to pay the Parker County taxes and a purchase price above market for 10.75 acres from the Parker County parcel, leaving another 60+ acres of raw land for agricultural use. Consummation of that sale will eliminate all debt on the remaining acreage in Parker County.

5.      The Debtor has had to address the lift stay motion of Ms. Cunningham, the remaining mortgage holder on the third parcel in Jack County. Although substantial reductions have been made to Ms. Cunningham's mortgage, she is seeking to foreclose. The Debtor intends to refinance the land to pay off the Cunnignham mortgage.


**NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS DISCLOSURE STATEMENT. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR THE DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE POTENTIALLY MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND AT A MUCH EARLIER DATE, AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.**

**THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THE DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN. THE DISCLOSURES ARE HEREIN CONTAINED AS PART OF THE PLAN. EACH CREDITOR AND INTEREST HOLDER IS URGED TO CAREFULLY REVIEW THE PLAN PRIOR TO VOTING ON IT.**

**ARTICLE 3**
**THE PLAN**

The Debtor's Plan is to continue to sell vacant land ,as needed, or to develop portions of that land to generate additional funds, and to use the profits from such land and home sales to pay all allowed claims.  Fortunately, the Debtor's speculation paid off as all land is worth considerably more than what the Debtor originally purchased it for.

As required by the Bankruptcy Code, the Plan places Claims in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims is impaired or unimpaired.  A Claim is impaired if the Plan alters the legal, equitable, or contractual rights to which the holder of the Claim is otherwise entitled.  If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote.  A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.  A class that is not impaired is deemed to accept the Plan.

**3.1 Unclassified Claims**

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses are not classified.  They are not considered impaired, and holders of such Claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan does not place the following Claims in any class:

Administrative Expenses

The Debtor must pay all Administrative Expenses in full from Estate assets. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid on the Effective Date of the Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant.  If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 Case.  These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.  The following chart lists the Debtor's estimated Administrative Expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Cavazos Hendricks Poirot P.C., Attorneys for Debtor[1] | $15,000 approx. | Fees approved by the Court will be paid immediately following the later of the Effective Date or approval by the Court out of the retainer and available cash. |
| CPA | $5,000.00 | Fees approved by the Court will be paid immediately following the later of the Effective Date or approval by the Court out of the available cash. |
| United States Trustee Fees[2] | $3,000.00 last quarter | Pay in full (estimated) |
| | | |
| | | |

---

[1] Fees and expenses will increase during course of administration.

[2] All fees required to be paid under 28 U.S.C. § 1930(a)(6) ("United States Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.  Any United States Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

| Johnson County | $1,548.33 | Paid in full |
|---|---|---|
| Alvarado ISD | $4,000.87 | |
| **TOTAL** | $28,500 approx. | |

## 3.2 Classes of Claims

Class 1: Parker County Secured Tax Claims - Class 1 consists of the disputed Secured Claim of the Parker County for ad valorem real estate taxes, Amended claims have been filed and once reconciled will be paid with statutory interest. Present amended Claim is in the sum of $10,486.32.

Class 2: Jack County Secured Tax Claims - Class 2 consists of the undisputed Secured Claim of the Jack County for ad valorem real estate taxes for $122.84, which will be paid in full, with any additional statutory interest.

Class 3: Johnson County Secured Tax Claim – Class 3 consists of taxes due on the entire acrage of the Debtor in Johnson County. Each of the home sales from the same are reducing this obligation. The joint venturer will pay the taxes on the 20 acres it develops and the Debtor will pay the balance of current taxes in full when due.

Class 4: Alvarado ISD Secured Tax Claim – Class 4 consists of taxes due on the entire acrage of the Debtor in Johnson County. Each of the home sales from the same are reducing this obligation. The joint venturer will pay the taxes on the 20 acres it develops and the Debtor will pay the balance of current taxes in full when due.

Class 5: C&G Realty E, LLC Secured Claim – Class 5 consists of the balance due on the secured mortgage obligation. As of this filing approx. $1.4 million has been paid down on this debt and 5 more home sales, already approved by this Court, are expected to extinguish this debt. If there is a remaining allowed secured claim on the raw land, the Debtor and/or its guarantor will satisfy the same.

Class 6:  Leland B. Little Secured Claim  – Class 6 consists of a purchase money mortgage with a balance of approx. $290,000 which will be paid out of the court-approved sale of the 10.75 acrs of this land.

Class 7: Pamela Diane Cunningham Secured Claim– Class 7 consists of the balance a purchase money mortgage of approximately $123,000. This will be paid in full by a refinancing of the mortgage upon approval of the Plan.

Class 8: Tri County Utilities Unsecured Claim – Class 8 consists of small claims for deposits on homes as they are being built. The deposit surplus is moved to the next property. If there is a balance due it will be paid in full

Class 9: Joint Venture Obligation – Class 9 consists of the obligation to transfer a portion of the Johnson County land once the C&G mortgage obligation has been fully satisfied. The Debtor will perform this obligation when it becomes due by execution of a deed.

## 3.3 Means for Implementation of the Plan

As provided in Sections 3.1 and 3.2, on the Effective Date, the Debtor shall:

(a) Refinance the Cunningham Note to provide sufficient funds to make effective date obligations for administrative expenses and real estate taxes.

(b) Net proceeds, as approved in the sale orders for the Johnson County homes shall continue to be remitted to C&G Realty, LLC. The final payoff, once agreed to or approved by the Court, shall either be made in cooperation with the joint venturer from home sale proceeds generated in the 20 acres in Johnson County, or by funds provided by the guarantor from other business income.

(c) Deposits have been continually kept with Tri-County to cover utilities as needed prior to home closings. Such deposits are moved from one home to the next and rarely need to be replenished. As the homes sell, this obligation will be extinguished.

(d) The Debtor shall retain its goats on two of the parcels and continue to grow its own hay on the land to retain the agricultural exemption on on such properties. And, if needed, future tax payments will be made by the Debtor's sole member, Andrea Vernon, as has been done in the past.

## 3.4 Executory Contracts

As indicated on the Debtor's Schedules, the Debtor was a party to only one executory contract on the Petition Date, the Joint Venture Agreement, which Debtor assumes. After the mortgage obligation is satisfied, the agreement will be fully consummated.

## 3.5 Tax Consequences of the Plan

***Creditors concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.***

## 3.6 Section 1129(b)

The Court may confirm the Plan even though less than all of the Classes of Claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of Claims or interests are set forth in Section 1129(b) of the Code. If the requirement of Section 1129(a)(8) is not met with respect to this Plan, the Debtor, as Plan Proponent, asks the Court to determine that the Plan does not discriminate unfairly and is fair and equitable with

respect to any rejecting Creditor.

## ARTICLE 4
## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 4.1 Ability to Initially Fund Plan

The Debtor must also show that there will be enough cash over the life of the Plan to make the required Plan payments.

The Debtor has provided sufficient information in the Disclosure Statement to establish the source of funds to be used.

*You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.*

## ARTICLE 5
## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors who do not accept the Plan will receive at least as much under the Plan as such Creditors would receive in a Chapter 7 liquidation.  A liquidation analysis is attached hereto as **Exhibit A**.

## ARTICLE 6
## GENERAL PROVISIONS

### 6.1 Effect of Confirmation

Except as otherwise provided in the Plan or in the Confirmation Order, (i) Confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after Confirmation of the Plan, all property dealt with by the Plan is free and clear of all Claims of Creditors of the Debtor.

The provisions of this Plan bind the Debtor, any entity acquiring property under this Plan, and any Creditor or equity interest holder, whether or not the Claim or interest of such Creditor or equity interest holder is impaired under the Plan and whether or not such Creditor or equity interest holder has accepted the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.2 Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**6.3 Retention of Jurisdiction by the Bankruptcy Court**

Until this Case is closed, the Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters:

(a) To make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan.

(b) To rule on any modifications of the Plan proposed under § 1127 of the Bankruptcy Code.

(c) To hear and allow all applications for compensation to professionals and other Administrative Expenses for a period of ninety (90) days following the Effective Date of this Plan. All expenses incurred after the Effective Date shall be paid in the ordinary course of the Reorganized Debtor's business.

(d) To resolve all issues regarding Claims objections and the allowance or disallowance of Claims; to liquidate damages or estimate any disputed, contingent, or unliquidated Claims; and to resolve any issues arising from the assumption/rejection of executory contracts or unexpired leases.

(e) To adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action or causes of action to recover assets and property, wherever located, of the Debtor's estate, including any action or proceeding brought by the Reorganized Debtor under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, whether such action or proceeding is brought before or after the Effective Date.

(f) To adjudicate all Claims to an ownership interest in any property of the Debtor's estate.

(g) To hear and determine Claims concerning Federal, State, and local taxes pursuant to Sections 346, 505, 525 and 1146 of the Code.

(h) To enter an order closing the Case. The Reorganized Debtor shall attempt to close the Case (either administratively or substantively) within 6 months of the Effective Date.

**6.4 Headings**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of the Plan.

**6.5 Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Bankruptcy Court may require additional disclosures and/or re-voting on the Plan.

Upon request of the Debtor, the United States Trustee, or the holder of an Allowed Unsecured Claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a Creditor whose Claim is provided for by the Plan to the extent necessary to take account of any payment of the Claim made other than under the Plan.

## 6.6 Final Decree

Once the estate has been fully administered, as provided by Federal Rule of Bankruptcy Procedure 3022, the Plan Proponent, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case.

## 6.7 Discharge

Upon Confirmation, to the extent that a Claim or Debt has not been dealt with under this Plan, such Claim or Debt will be released as to the Debtor. The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court shall remain in effect until the Effective Date.

As of the Effective Date, except as provided in the Plan or the Confirmation Order, all holders of Claims against the Debtor shall be precluded from asserting against the Reorganized Debtor, or its successors or property, any other or further Claims, debts, rights, causes of action, liabilities based upon any act, omission, transaction, or other activity of any kind or any nature that occurred prior to the Effective Date.

Entry of the Confirmation Order shall discharge all existing debts and Claims of any kind, nature, or description whatsoever against the Debtor or any of its assets or properties to the fullest extent permitted by Section 1141 of the Code. No third-party releases are being sought, nor are releases sought for any claims, should they arise, due to environmental or criminal statutes. The Confirmation Order shall contain such injunctions as may be necessary and helpful to effectuate the discharge of the Debtor provided herein.

Dated: January 23, 2023.

Respectfully submitted,

/s/ *Lyndel Anne Vargas*
Lyndel Anne Vargas
State Bar No. 24058913
Christopher J. Volkmer
State Bar No. 20607800
CAVAZOS HENDRICKS POIROT, P.C.
Suite 570, Founders Square
900 Jackson Street
Dallas, TX 75202
Phone: (214) 573-7344
Fax: (214) 573-7399
Email: LVargas@chfirm.com

Attorneys for the Debtor-In-Possession

**EXHIBIT A**

**LIQUIDATION ANALYSIS**

As the records in these proceedings reflect, all three parcels of raw land owned by the Debtor have appreciated in value and the mortgage obligations generated when they were purchased have been significantly reduced prepetition and, in the case of Johnson County, post-petition.

If a Chapter 7 Trustee were to seek to sell the raw land now, it would be competing with several other sellers in the market and likely nor generate offers that are true market value. Regardless, however, there would be more than sufficient funds to pay all creditors in full with interest. The real issue in a forced liquidation analysis would be that the land would not be sold at its best value, and with the substantial slow downs in the real estate and mortgage market, due primarily to significant increases in interest rates, there are less eligible buyers. Additionally, any homes which have not been completed on Debtor's land would immediately be devalued as the costs of competition and lack of a builder's warranty would negatively impact the sale prices of the same.

Since the real estate market is fluxuating, as well as the financial markets, the Debtor cannot predict how much of a reduction there would be in valuation on a liquidation, but believes it would be substantial, and that sales would take longer to close.

Thus, despite full payment of the 8 creditors, all payments would be significantly delayed, increasing property taxes and other costs of sale.