Lyndel Anne Vargas
State Bar No. 24058913
Christopher J. Volkmer
State Bar No. 20607800
CAVAZOS HENDRICKS POIROT, P.C.
Suite 570, Founders Square
900 Jackson Street
Dallas, TX 75202
Phone: (214) 573-7344
Fax: (214) 573-7399
Email: LVargas@chfirm.com

Attorneys for the Debtor-In-Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In Re: <br><br> THE JUMBA, LLC, <br><br> Debtor. | § § § § § § § | Case No. 22-31740-sgj11 |

# PLAN OF REORGANIZATION

    This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of The Jumba, LLC (the "Debtor"), and to seek your vote to accept the Plan.

    You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that the Plan includes a list of definitions and a section of frequently asked questions.

    Your rights may be affected by this Plan of Reorganization. You should consider discussing this document with an attorney.

    COMES NOW, The Jumba, LLC, Debtor-in-Possession ("Jumba" or "Debtor") and proposes the following Plan of Reorganization (the "Plan"). The Plan proposes segregation of the Creditors and Equity Holders of Jumba into five (5) different classes. The Plan will be funded by the operations income arising from the anticipated construction and sale of additional homes, as well as the sale of same acreage.

## ARTICLE 1
## DEFINITIONS

    The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The

definitions that follow that are found in the Code are for convenience of reference only and are superseded by the definitions found in the Code.

1. **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

2. **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including any actual and necessary expenses of Jumba's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor, and allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Debtor under Chapter 123, Title 28, United States Code.

3. **Allowed Claim**: Any claim against the Debtor to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and as to which either (i) a party in interest, including the Debtor, does not file an objection, or (ii) is allowed by a Final Order, or (b) the Claim was scheduled by the Debtor and not listed as disputed, contingent or unliquidated.  Allowed Claim includes all Claims deemed unsecured pursuant to § 506(a) of the Code.  When "Allowed Claim" is used in the context of a Secured Claim, the provisions of § 506(b) of the Code shall also apply.

4. **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor shall be entitled on the Confirmation Date.

5. **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate to the extent allowed as secured claims under § 506 of the Code.

6. **Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

7. **Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

8. **Bankruptcy Court** or **Court**: The United States Bankruptcy Court for the Northern District of Texas, Dallas Division or such other court in which this Case may be pending.

9. **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

10. **Case**: The above-captioned bankruptcy case under Chapter 11 of the Bankruptcy Code in which The Jumba, LLC is the Debtor-in-Possession.

11. **Claim**: Any obligation or potential obligation of the Debtor including any claim within the definition of §§ 101(5) or 102(2) of the Code and any obligation of the Debtor which is entitled to payment pursuant to §§ 503, 507, or 1129 of the Code.

12. **Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

13. **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

14. **Confirmation Date**: The Date upon which the Bankruptcy Court enters the Confirmation Order.

15. **Confirmation Hearing**: The hearing to be held in February of 2023 to consider confirmation of the Plan pursuant to § 1128 of the Code. A separate Notice of Confirmation Hearing will be filed by Debtor's Counsel.

16. **Confirmation Order**: The order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

17. **Creditor**: Any person who has a Claim against The Jumba, LLC that arose on or before the Petition Date.

18. **Debtor:** The Jumba, LLC.

19. **Disputed Claim:** Any claim against The Jumba, LLC pursuant to § 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

20. **Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

21. **Effective Date**: The first calendar day after sixty (60) days after the Final Confirmation Date.

22. **Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

23. **Final Confirmation Date**: The first calendar day after the Confirmation Order becomes final and non-appealable.

24. **Petition Date**: September 23, 2022, the date the Chapter 11 petition for relief was filed.

25. **Plan**: This Plan of Reorganization, either in its present form or as it may be altered, amended, or modified from time to time.

26. **Plan Proponent**: The Jumba, LLC, Debtor-in-Possession has filed this Plan.

27. **Priority Tax Claim**: Any Claim entitled to priority in payment under § 507(a)(8) of the Code.

28. **Reorganized Debtor**: The Debtor after the Effective Date.

29. **Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

30. **Secured Creditor**: Any Creditor that holds a Claim that was properly secured by property of the Debtor as of the Petition Date and remains unpaid on the effective date of the plan.

31. **Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim, including, (i) the portion of any Claim secured by property of the Debtor to the extent such Claims is not a Secured Claim, if the holder of such Claim has not properly elected to be treated as a fully secured creditor pursuant to 1111(b) of the Code, and (ii) Claims arising from guaranties, indemnities, and similar obligations.

## ARTICLE 2
## BACKGROUND OF THE DEBTOR

**2.1 The Debtor's Pre-Petition Business Operations**

The Debtor was formed in May of 2017 to acquire land for speculation, some for future development, and some to retain as raw land.

**2.2 Filing of the Debtor's Chapter 11 Petition and Post-Petition Operations**

The Debtor filed its voluntary petition under Chapter 11 on September 23, 2022. The Debtor has moved forward under its prepetition Joint Venture Agreement with Kairos Country Homes, LLC ("Kairos") to develop some 10-acre homesteads along the roadside of its Johnson County, Texas property so that it could pay the mortgage obligation for that property and keep the remaining land, aside from the acres for Kairos, for agricultural use.

**2.3 All Sources of the Debtor's Income**

The sole income that that Debtor has are a couple of secured promissory notes. The other income has been the Debtor's lot value contributed to the joint venture' home construction and paydowns of its lenders in Johnson County.

**2.4 Past and Projected Income and Expenses**

    A.    <u>Past Income of The Jumba, LLC</u>

In the past the Debtor has generated some income from the sale of lots, either directly or in connection with development of a home on a lot with the assistance of a builder. Such income, however, has been used to pay taxes aan pay down the Debtor's mortgages in Parker and Jack Counties.

    B.    <u>Projected Income and Expenses from Land and House Sales</u>

The Debtor projects income of approximately $302,000 from the sale of 10.75 acres of its land in Parker County. The Option Fee has been paid directly to the assessor's office per the Option Contract with Vista Homes, LLC. This sale income will cover the mortgage obligation on the Parker County Property and any additional real estate taxes.

The other projected income will come from the refinancing of the raw land in Jack County to pay the mortgage balance and generate sufficient funds to pay all outstanding utility and insurance bills, if any, and the admininstrative expenses of this Estate.

**2.5 Significant Events During the Bankruptcy Case**

1. The Debtor-In-Possession employed Cavazos Hendricks Poirot, P.C. as Counsel [Docket No. 34].

2. An accountant, Ms. Mahdu Ahudja, has also been engaged as Debtor's accountant to file 2022 and 2023 tax returns. [ Docket No.        ].

3. Thus far over $1.4 million has been paid to reduce the matured mortgage obligations to C&G Realty E, LLC to avoid the accrual of default interest on the full obligation of approximately $3.4million. The Bankruptcy Court has authorized the sale of the remaining 5 homes on the Johnson County Property to satisfy that obligation.

4. The Debtor received an Option Contract which entailed an Option Fee sufficient to pay the Parker County taxes and a purchase price above market for 10.75 acres from the Parker County parcel, leaving another 60+ acres of raw land for agricultural use. Consummation of that sale will eliminate all debt on the remaining acreage in Parker County.

5. The Debtor has had to address the lift stay motion of Ms. Cunningham, the remaining mortgage holder on the third parcel in Jack County. Although substantial reductions have been made to Ms. Cunningham's mortgage, she is seeking to foreclose. The Debtor intends to refinance the land to pay off the Cunnignham mortgage.

**NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS DISCLOSURE STATEMENT. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR THE DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE POTENTIALLY MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND AT A MUCH EARLIER DATE, AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.**

**THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THE DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN. THE DISCLOSURES ARE HEREIN CONTAINED AS PART OF THE PLAN. EACH CREDITOR AND INTEREST HOLDER IS URGED TO CAREFULLY REVIEW THE PLAN PRIOR TO VOTING ON IT.**

## ARTICLE 3
## THE PLAN

The Debtor's Plan is to continue to sell vacant land ,as needed, or to develop portions of that land to generate additional funds, and to use the profits from such land and home sales to pay all allowed claims. Fortunately, the Debtor's speculation paid off as all land is worth considerably more than what the Debtor originally purchased it for.

As required by the Bankruptcy Code, the Plan places Claims in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims is impaired or unimpaired. A Claim is impaired if the Plan alters the legal, equitable, or contractual rights to which the holder of the Claim is otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

**3.1 Unclassified Claims**

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

<u>Administrative Expenses</u>

The Debtor must pay all Administrative Expenses in full from Estate assets. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid on the Effective Date of the Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 Case. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment. The following chart lists the Debtor's estimated Administrative Expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
| --- | --- | --- |
| Cavazos Hendricks Poirot P.C., Attorneys for Debtor[1] | $15,000 approx. | Fees approved by the Court will be paid immediately following the later of the Effective Date or approval by the Court out of the retainer and available cash. |
| CPA | $5,000.00 | Fees approved by the Court will be paid immediately following the later of the Effective Date or approval by the Court out of the available cash. |
| United States Trustee Fees[2] | $3,000.00 last quarter | Pay in full (estimated) |
|  |  |  |
|  |  |  |

---

[1] Fees and expenses will increase during course of administration.

[2] All fees required to be paid under 28 U.S.C. § 1930(a)(6) ("United States Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code. Any United States Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

| Johnson County | $1,548.33 | Paid in full |
| --- | --- | --- |
| Alvarado ISD | $4,000.87 | |
| **TOTAL** | $28,500 approx. | |

**3.2 Classes of Claims**

Class 1: Parker County Secured Tax Claims - Class 1 consists of the disputed Secured Claim of the Parker County for ad valorem real estate taxes, Amended claims have been filed and once reconciled will be paid with statutory interest. Present amended Claim is in the sum of $10,486.32.

Class 2: Jack County Secured Tax Claims - Class 2 consists of the undisputed Secured Claim of the Jack County for ad valorem real estate taxes for $122.84, which will be paid in full, with any additional statutory interest.

Class 3: Johnson County Secured Tax Claim – Class 3 consists of taxes due on the entire acrage of the Debtor in Johnson County. Each of the home sales from the same are reducing this obligation. The joint venturer will pay the taxes on the 20 acres it develops and the Debtor will pay the balance of current taxes in full when due.

Class 4: Alvarado ISD Secured Tax Claim – Class 4 consists of taxes due on the entire acrage of the Debtor in Johnson County. Each of the home sales from the same are reducing this obligation. The joint venturer will pay the taxes on the 20 acres it develops and the Debtor will pay the balance of current taxes in full when due.

Class 5: C&G Realty E, LLC Secured Claim – Class 5 consists of the balance due on the secured mortgage obligation. As of this filing approx. $1.4 million has been paid down on this debt and 5 more home sales, already approved by this Court, are expected to extinguish this debt. If there is a remaining allowed secured claim on the raw land, the Debtor and/or its guarantor will satisfy the same.

Class 6: Leland B. Little Secured Claim – Class 6 consists of a purchase money mortgage with a balance of approx. $290,000 which will be paid out of the court-approved sale of the 10.75 acrs of this land.

Class 7: Pamela Diane Cunningham Secured Claim– Class 7 consists of the balance a purchase money mortgage of approximately $123,000. This will be paid in full by a refinancing of the mortgage upon approval of the Plan.

<u>Class 8: Tri County Utilities Unsecured Claim</u> – Class 8 consists of small claims for deposits on homes as they are being built. The deposit surplus is moved to the next property. If there is a balance due it will be paid in full

<u>Class 9: Joint Venture Obligation</u> – Class 9 consists of the obligation to transfer a portion of the Johnson County land once the C&G mortgage obligation has been fully satisfied. The Debtor will perform this obligation when it becomes due by execution of a deed.

**3.3 Means for Implementation of the Plan**

As provided in Sections 3.1 and 3.2, on the Effective Date, the Debtor shall:

(a) Refinance the Cunningham Note to provide sufficient funds to make effective date obligations for administrative expenses and real estate taxes.

(b) Net proceeds, as approved in the sale orders for the Johnson County homes shall continue to be remitted to C&G Realty, LLC. The final payoff, once agreed to or approved by the Court, shall either be made in cooperation with the joint venturer from home sale proceeds generated in the 20 acres in Johnson County, or by funds provided by the guarantor from other business income.

(c) Deposits have been continually kept with Tri-County to cover utilities as needed prior to home closings. Such deposits are moved from one home to the next and rarely need to be replenished. As the homes sell, this obligation will be extinguished.

(d) The Debtor shall retain its goats on two of the parcels and continue to grow its own hay on the land to retain the agricultural exemption on on such properties. And, if needed, future tax payments will be made by the Debtor's sole member, Andrea Vernon, as has been done in the past.

**3.4 Executory Contracts**

As indicated on the Debtor's Schedules, the Debtor was a party to only one executory contract on the Petition Date, the Joint Venture Agreement, which Debtor assumes. After the mortgage obligation is satisfied, the agreement will be fully consummated.

**3.5 Tax Consequences of the Plan**

*Creditors concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.*

**3.6 Section 1129(b)**

The Court may confirm the Plan even though less than all of the Classes of Claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of Claims or interests are set forth in Section 1129(b) of the Code. If the requirement of Section 1129(a)(8) is not met with respect to this Plan, the Debtor, as Plan Proponent, asks the Court to determine that the Plan does not discriminate unfairly and is fair and equitable with

respect to any rejecting Creditor.

## ARTICLE 4
## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**4.1 Ability to Initially Fund Plan**

The Debtor must also show that there will be enough cash over the life of the Plan to make the required Plan payments.

The Debtor has provided sufficient information in the Disclosure Statement to establish the source of funds to be used.

*You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.*

## ARTICLE 5
## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors who do not accept the Plan will receive at least as much under the Plan as such Creditors would receive in a Chapter 7 liquidation.  A liquidation analysis is attached hereto as **Exhibit A**.

## ARTICLE 6
## GENERAL PROVISIONS

**6.1 Effect of Confirmation**

Except as otherwise provided in the Plan or in the Confirmation Order, (i) Confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after Confirmation of the Plan, all property dealt with by the Plan is free and clear of all Claims of Creditors of the Debtor.

The provisions of this Plan bind the Debtor, any entity acquiring property under this Plan, and any Creditor or equity interest holder, whether or not the Claim or interest of such Creditor or equity interest holder is impaired under the Plan and whether or not such Creditor or equity interest holder has accepted the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**6.2 Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**6.3 Retention of Jurisdiction by the Bankruptcy Court**

Until this Case is closed, the Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters:

(a) To make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan.

(b) To rule on any modifications of the Plan proposed under § 1127 of the Bankruptcy Code.

(c) To hear and allow all applications for compensation to professionals and other Administrative Expenses for a period of ninety (90) days following the Effective Date of this Plan. All expenses incurred after the Effective Date shall be paid in the ordinary course of the Reorganized Debtor's business.

(d) To resolve all issues regarding Claims objections and the allowance or disallowance of Claims; to liquidate damages or estimate any disputed, contingent, or unliquidated Claims; and to resolve any issues arising from the assumption/rejection of executory contracts or unexpired leases.

(e) To adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action or causes of action to recover assets and property, wherever located, of the Debtor's estate, including any action or proceeding brought by the Reorganized Debtor under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, whether such action or proceeding is brought before or after the Effective Date.

(f) To adjudicate all Claims to an ownership interest in any property of the Debtor's estate.

(g) To hear and determine Claims concerning Federal, State, and local taxes pursuant to Sections 346, 505, 525 and 1146 of the Code.

(h) To enter an order closing the Case. The Reorganized Debtor shall attempt to close the Case (either administratively or substantively) within 6 months of the Effective Date.

**6.4 Headings**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of the Plan.

**6.5 Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Bankruptcy Court may require additional disclosures and/or re-voting on the Plan.

Upon request of the Debtor, the United States Trustee, or the holder of an Allowed Unsecured Claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a Creditor whose Claim is provided for by the Plan to the extent necessary to take account of any payment of the Claim made other than under the Plan.

**6.6 Final Decree**

Once the estate has been fully administered, as provided by Federal Rule of Bankruptcy Procedure 3022, the Plan Proponent, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case.

**6.7 Discharge**

Upon Confirmation, to the extent that a Claim or Debt has not been dealt with under this Plan, such Claim or Debt will be released as to the Debtor. The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court shall remain in effect until the Effective Date.

As of the Effective Date, except as provided in the Plan or the Confirmation Order, all holders of Claims against the Debtor shall be precluded from asserting against the Reorganized Debtor, or its successors or property, any other or further Claims, debts, rights, causes of action, liabilities based upon any act, omission, transaction, or other activity of any kind or any nature that occurred prior to the Effective Date.

Entry of the Confirmation Order shall discharge all existing debts and Claims of any kind, nature, or description whatsoever against the Debtor or any of its assets or properties to the fullest extent permitted by Section 1141 of the Code. No third-party releases are being sought, nor are releases sought for any claims, should they arise, due to environmental or criminal statutes. The Confirmation Order shall contain such injunctions as may be necessary and helpful to effectuate the discharge of the Debtor provided herein.

Dated: January 23, 2023.

Respectfully submitted,

/s/ *Lyndel Anne Vargas*
Lyndel Anne Vargas
State Bar No. 24058913
Christopher J. Volkmer
State Bar No. 20607800
CAVAZOS HENDRICKS POIROT, P.C.
Suite 570, Founders Square
900 Jackson Street
Dallas, TX 75202
Phone: (214) 573-7344
Fax: (214) 573-7399
Email: LVargas@chfirm.com

Attorneys for the Debtor-In-Possession

# EXHIBIT A

# LIQUIDATION ANALYSIS

      As the records in these proceedings reflect, all three parcels of raw land owned by the Debtor have appreciated in value and the mortgage obligations generated when they were purchased have been significanly reduced prepetition and, in the case of Johnson County, post-petition.

      If a Chapter 7 Trustee were to seek to sell the raw land now, it would be competing with several other sellers in the market and likely nor generate offers that are true market value. Regardless, however, there would be more than sufficient funds to pay all creditors in full with interest. The real issue in a forced liquidation analysis would be that the land would not be sold at its best value, and with the substantial slow downs in the real estate and mortgage market, due primarily to significant increases in interest rates, there are less eligible buyers. Additionally, any homes which have not been completed on Debtor's land would immediately be devalued as the costs of competition and lack of a builder's warranty would negatively impact the sale prices of the same.

      Since the real estate market is fluxuating, as well as the financial markets, the Debtor cannot predict how much of a reduction there would be in valuation on a liquidation, but believes it would be substantial, and that sales would take longer to close.

      Thus, despite full payment of the 8 creditors, all payments would be significantly delayed, increasing property taxes and other costs of sale.