Lyndel Anne Vargas
State Bar No. 24058913
CAVAZOS HENDRICKS POIROT, P.C.
Suite 570, Founders Square
900 Jackson Street
Dallas, TX 75202
Phone: (214) 573-7344
Fax: (214) 573-7399
Email: LVargas@chfirm.com

Attorneys for the Debtor-In-Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| | § | |
| THE JUMBA, LLC, | § | Case No. 22-31740-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |

## FIRST AMENDED DISCLOSURE STATEMENT FOR THE
## CHAPTER 11 PLAN OF REORGANIZATION OF THE JUMBA, LLC

## IMPORTANT INFORMATION REGARDING THIS DISCLOSURE STATEMENT
### DISCLOSURE STATEMENT, DATED MAY 2, 2023

## SOLICITATION OF VOTES TO ACCEPT OR REJECT
## THE DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

| CLASSES | NAME OF CLASS UNDER THE PLAN | APPROXIMATE BALANCES |
|---------|------------------------------|----------------------|
| CLASS 1 | **Parker County** | |
| CLASS 2 | **Jack County** | |
| CLASS 3 | **Johnson County** | |
| CLASS 4 | **Alvarado ISD** | |
| CLASS 5 | **C&G Realty E, LLC** | Estimated at $ as of 5/2/2023 |
| CLASS 6 | **Leland B. Little** | Paid off first mortgage in sale of 10.75 acres. 0 due. |
| CLASS 7 | **Pamela Diane Cunningham** | Claim is $_____ plus alleged "lease back claim" Debtor admits secured debt with balance of $_____ as of 5/2//2023. |
| CLASS 8 | **Tri County Utilities** | Only on last 2 houses. Approx. $_____ |
| CLASS 9 | **Joint Venture Obligation** | In-kind obligation to transfer 20 acres |

**YOU ARE RECEIVING THIS DOCUMENT AND THE ACCOMPANYING MATERIALS BECAUSE AS OF THE VOTING RECORD DATE, YOU HELD A CLAIM AGAINST OR INTEREST IN THE DEBTOR IN ONE OF THE FOLLOWING CLASSES AND THEREFORE YOU ARE ENTITLED TO VOTE ON THE PLAN:**

| DELIVERY OF BALLOTS |
|---|
| 1.   Ballots must be actually received by the Solicitation Agent before the Voting Deadline (***). |
| 2.   Ballots may be returned by the following methods: (a) in the enclosed pre-paid, pre-addressed return envelope or (b) via first class mail, overnight courier, or hand delivery to the address set forth below |
| If you have any questions on the procedures for voting on the Plan, please contact L. Vargas at LVargas@chfirm.com. |

## RECOMMENDATION BY THE DEBTOR

**DEBTOR STRONGLY RECOMMENDS THAT ALL HOLDERS OF CLAIMS OR INTERESTS WHOSE VOTES ARE BEING SOLICITED SUBMIT BALLOTS TO ACCEPT THE PLAN BY RETURNING THEIR BALLOTS SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT/DEBTOR'S COUNSEL NO LATER THAN *** PURSUANT TO THE INSTRUCTIONS SET FORTH HEREIN AND ON THE BALLOTS. THE MANAGER AND SOLE MEMBER OF THE DEBTOR HAS APPROVED THE TRANSACTIONS CONTEMPLATED BY THE PLAN AND DESCRIBED IN THIS FIRST AMENDED DISCLOSURE STATEMENT, AND THE DEBTOR BELIEVES THAT THE COMPROMISES CONTEMPLATED UNDER THE PLAN ARE FAIR AND EQUITABLE, MAXIMIZE THE VALUE AND PROVIDE THE BEST RECOVERIES TO CLAIM AND INTEREST HOLDERS. RESTRUCTURING OBJECTIVES.**

**PLEASE NOTE THAT THE DESCRIPTION OF THE PLAN PROVIDED THROUGHOUT THIS FIRST AMENDED DISCLOSURE STATEMENT IS ONLY A SUMMARY PROVIDED FOR CONVENIENCE PURPOSES.**

**THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARIES CONTAINED IN THIS DISCLOSURE STATEMENT AND THE PLAN.**

**A COPY OF THE PLAN TO WHICH THIS DISCLOSURE STATEMENT RELATES IS ATTACHED HERETO AS EXHIBIT A.**

**READERS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE AND SHOULD CONSULT WITH THEIR OWN ADVISORS BEFORE CASTING A VOTE WITH RESPECT TO THE PLAN.**

**THE DEBTOR HAS NOT AUTHORIZED ANY PERSON TO GIVE ANY INFORMATION OR ADVICE OR TO MAKE ANY REPRESENTATION IN CONNECTION WITH THE PLAN AND THIS DISCLOSURE STATEMENT.**

**THE INFORMATION IN THIS DISCLOSURE STATEMENT IS BEING**

**PROVIDED SOLELY FOR THE PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN OR OBJECTING TO CONFIRMATION. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE USED BY ANY PARTY FOR ANY OTHER PURPOSE.**

**ALL EXHIBITS TO THE DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL IN THIS DISCLOSURE STATEMENT.**

**ANY DISCUSSION OF FEDERAL, STATE, LOCAL, OR NON-U.S. TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO THE READER OR A HOLDER OF A CLAIM OR INTEREST. READERS AND ALL HOLDERS OF CLAIMS OR INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL, AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.**

## <u>SPECIAL NOTICE REGARDING FEDERAL AND STATE SECURITIES LAWS</u>

**Neither this Disclosure Statement nor the Plan has been filed with the United States Securities and Exchange Commission (the "<u>SEC</u>") or any state authority. The Plan has not been approved or disapproved by the SEC or any state securities commission, and neither the SEC nor any state securities commission has passed upon the accuracy or adequacy of this Disclosure Statement or the merits of the Plan. Any representation to the contrary is a criminal offense.**

**This Disclosure Statement has been prepared pursuant to sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rule 3016(b). The Plan does not involve the issuance of any securities and thus its implementation is not subject to the filing of a registration statement filed with the SEC under the Securities Act of 1933, as amended (the "<u>Securities Act</u>"), or any securities regulatory authority of any state under applicable state securities law (collectively, the "<u>Blue Sky Laws</u>"). Furthermore, there have been no prepetition solicitation of votes for the Plan. Neither the solicitation of votes nor this Disclosure Statement constitute an offer to sell or the solicitation of an offer to buy securities.**

**This Disclosure Statement contains "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Readers are cautioned that any forward-looking statements in this Disclosure Statement are based on assumptions that are believed to be reasonable, but are subject to a wide range of risks, including risks associated with the following: (a) future financial results and liquidity, including the ability to finance operations in the ordinary course of business; (b) the relationships with and payment terms provided by trade creditors; (c) additional post-restructuring financing requirements; (d) future dispositions and acquisitions; (e) the effect of competitive products, services, or procuring by competitors;(f) changes to the**

costs of commodities and raw materials; (g) the proposed restructuring and costs associated therewith; (h) the effect of conditions in the local, national, and global economy on the Debtor; (i) the ability to obtain relief from the bankruptcy court to facilitate the smooth operation of the Debtor's businesses under chapter 11; (j) the confirmation and consummation of the Plan; (j) the consummation of the replacement loan on the Jack County property; and (k each of the other risks identified in this Disclosure Statement. Due to these uncertainties, readers cannot be assured that any forward-looking statements will prove to be correct. The Debtor is under no obligation to (and expressly disclaims any obligation to) update or alter any forward-looking statements whether as a result of new information, future events, or otherwise, unless instructed to do so by the Bankruptcy Court.

**THIS DISCLOSURE STATEMENT AND THE PLAN CONTAIN MATERIAL NON-PUBLIC INFORMATION CONCERNING THE DEBTOR AND ITS DEBTS.**

You are cautioned that all forward-looking statements are necessarily speculative, and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward-looking statements. The liquidation analysis, financial projections, and other projections and forward-looking information contained herein and attached hereto are only estimates, and the timing and amount of actual distributions to Holders of Allowed Claims and Interests, among other things, may be affected by many factors that cannot be predicted. Any analyses, estimates, or recovery projections may or may not turn out to be accurate.

## I.  Executive Summary

### A.  Purpose of this Disclosure Statement and the Plan

The Jumba, LLC, as Debtor and Debtor-In-Possession (the "Debtor" or "The Jumba"), submits this first amended disclosure statement (including all exhibits hereto, the "Disclosure Statement"), pursuant to sections 1125 and 1126 of the Bankruptcy Code, to the Office of the U.S. Trustee, all holders of unliquidated administrative claims, holders of Classes 1 through Class 7 (Secured Claims against the Debtor), holders of Class 8 (General Unsecured Claim) and holders of Class 9 ( the Joint Venturer) in connection with the solicitation of acceptances with respect to the *Chapter 11 Plan of Reorganization of May 2, 2023* (as may be amended or modified or supplemented from time to time and including all exhibits and supplements thereto, the "Plan"). A copy of the Plan is attached hereto as **Exhibit A** and incorporated herein by reference.

**THE DEBTOR STRONGLY RECOMMENDS THAT YOU VOTE TO ACCEPT THE PLAN. THE DEBTOR BELIEVES THAT THE COMPROMISES AND SETTLEMENTS CONTEMPLATED BY THE PLAN ARE FAIR AND EQUITABLE, MAXIMIZE THE VALUE OF THE DEBTOR'S ESTATE, AND MAXIMIZE RECOVERIES TO HOLDERS OF CLAIMS AND INTERESTS. THE DEBTOR BELIEVESS THE PLAN IS THE BEST AVAILABLE ALTERNATIVE FOR IMPLEMENTING A RESTRUCTURING OF THE DEBTOR'S BALANCE SHEET.**

**B. Overview of the Transactions Contemplated by the Plan**

As of April 24, 2023, the Debtor had approximately $1.3 million in total debt obligations due to a paydown of the C&G Realty E, LLC ("C&G") mortgage from the 6 homes built in Johnson County pursuant to the joint venture. The remaining 2 home sales have been approved by the Court, and it is anticipated that they will be closed prior to the Effective Date and the guarantor will pay the balance. If they have not, or the claim of C&G has not been fully paid, C&G shall participate in voting on this plan. Additionally, the Debtor sold 10.75 acres of vacant land in Parker County which provided for full payment of the Little first mortgage on that property and substantial payment of real estate taxes to Parker County. Thus, Mr. Little no longer holds a claim in this Estate.

As explained more fully in Article III of this Disclosure Statement, the Debtor anticipates that it will either sell the Jack County parcel consisting of approximately 90 acres to pay the Chuyhan note, or pay the same from a capital contribution by owner, Mrs. Vernon. The remaining debts will be satisfied by the consummation of sales by the Debtor of portions of its real estate and note income to fully-satisfy the mortgage and current tax obligations secured by said properties.

To implement a comprehensive financial restructuring of its remaining funded debt, the Debtor commenced a chapter 11 case (the "Chapter 11 Case") in the United States Bankruptcy Court for the Northern District of Texas Dallas Division (the "Bankruptcy Court").

 • Each Holder of an Undisputed Secured Claim will be paid 100% of their Allowed Claim which is still outstanding, if any, with interest pursuant to the terms of each such obligation;

 • All unpaid Priority Tax Claims will receive post-confirmation interest at the rate of 5% per annum. The Estate will pay the Priority Tax Claims not satisfied in the previously court-approved real estate closings, within twelve (12) months of the Effective Date with interest at the rate of 5% per annum. The Estate will pay any and all post-petition sales and ad valorem taxes when due and in the ordinary course of business;

 • All Administrative Claims and Other Secured Claims will be paid in full in Cash or receive such other treatment that renders such Claims unimpaired;

 • Each Holder of unliquidated secured claims will continue to hold secured status and thus their collateral, if any, and the amount of the secured portion of their claim, will need to be determined by agreement or the Court for purposes of allowance; and

As described below, you are receiving this Disclosure Statement because you are a Holder of a Claim or Interest entitled to vote to accept or reject the Plan. Prior to voting on the Plan, you are encouraged to read this Disclosure Statement and all documents attached to this Disclosure Statement in their entirety. As reflected in this Disclosure Statement, there are risks, uncertainties, and other important factors that could cause the Debtor's actual performance or achievements to be materially different from those they may project, and the Debtor undertakes no obligation to update any such statement. Certain of these risks, uncertainties, and factors are described in Section

VIII of this Disclosure Statement, entitled "Risk Factors."

## C. Summary of the Plan

The Plan organizes the Debtor's creditor and equity constituencies into groups called "Classes." For each Class, the Plan describes: (1) the underlying Claim or Interest; (2) the recovery available to the Holders of Claims or Interests in that Class under the Plan; (3) whether the Class is Impaired or Unimpaired under the Plan; (4) the form of consideration, if any, that Holders in such Class will receive on account of their respective Claims or Interests; and (5) whether the Holders of Claims and Interests in such Class are entitled to vote to accept or reject the Plan.

The proposed distributions and classifications under the Plan are based upon a number of factors, including the Debtor's valuation and liquidation analyses. The valuation of the Reorganized Debtor as a going concern is based upon the value of the Debtor's assets and liabilities as of an assumed Effective Date of June 30, 2023 or such date as is set at the confirmation hearing, and incorporates various assumptions and estimates, as discussed herein by the Debtor, after consultation with local builders in North Texas.

The table below provides a summary of the classification, description, and treatment of Claims and Interests under the Plan. This information is provided in summary form below for illustrative purposes only and is qualified in its entirety by reference to the provisions of the Plan. Any estimates of Claims or Interests in this Disclosure Statement may vary from the final amounts allowed by the Bankruptcy Court. Your ability to receive distributions under the Plan depends upon the ability of the Debtor to obtain Confirmation and satisfy the conditions necessary to consummate the Plan.

To the extent that any inconsistency exists between the summaries contained in this Disclosure Statement and the Plan, the terms of the Plan shall govern.

For a more detailed description of the treatment of Claims and Interests under the Plan and the sources of satisfaction for Claims and Interests, see Section V of this Disclosure Statement, entitled "Summary of the Plan."

| Class | Claim or Interest | Status | Voting Rights | Projected Plan Recovery (%) |
|---|---|---|---|---|
| | Cavazos Hendricks Poirot P.C., Attorneys for Debtor | Adm. | No | 100% of allowed claim Est. $45,000.00 |
| | United States Trustee Fees | Adm. | | 100% |
| | CPA | Adm. | No | 100% of allowed claim Est. $5,000.00 |

| 1 | Parker CAD | S | Yes | 100% of allowed claim 2022 taxes POC No. 2-4 is $3,960.72 + int |
| 2 | Jack County | S | Yes | 100% 2022 Taxes POC $122.84 + int. |
| 3 | Johnson County | S | Yes | 100% 2022 taxes $1,548.33 + int. |
| 4 | Alvarado ISD | S | Yes | 100% |
| 5 | C&G Realty E, LLC | S | Yes, if not fully pd. Per sale order before voting | 100% of unpaid allowed claim |
| 6 | Leland B. Little | S | No | 100% of claim paid |
| 7 | Pamela Diane Cunningham | S | Yes | 100% of unpaid allowed claim |
| 8 | Tri County Utilities | U | Yes | 100% |
| 9 | Joint Venture Obligation | U | No/ Insider | 100% - in kind transfer |

### D.  Voting on the Plan

All Holders of Claims are  entitled to vote on the Plan (the "Voting Classes"). Classes 1 through 5 and 7 through 8 will all be paid pursuant to their contractual terms and  receive 100% payment in full  and thus are conclusively presumed to accept the Plan because they are Unimpaired by the Plan by complete cure at their post-maturity rates.

**The Voting Deadline is 11:59 p.m., prevailing Central Time, on \*\*\*.**  To be counted as votes to accept or reject the Plan, each ballot (a "Ballot") must be properly executed, completed, and delivered (either by using the return envelope provided, by first class mail, overnight courier, personal delivery, or electronic submission) such that it is **actually received** before the Voting Deadline by \*\*\* (the "Solicitation Agent") as follows:

| DELIVERY OF BALLOTS |
|---|
| 1. Ballots must be actually received by Debtor's Counsel before the Voting Deadline.<br><br>Ballots may be returned by the following methods: (a) in the enclosed pre-paid, pre-addressed return envelope or (b) via first class mail, overnight courier, or hand delivery to the address set forth below The Jumba, LLC c/o L. Vargas<br><br>2. 900 Jackson St. Suite 570,<br><br>3. Dallas, TX 75202<br><br>If you have any questions on the procedures for voting on the Plan, please contact Debtor's Counsel by emailing LVargas@chfirm.com. |

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT DEBTOR'S COUNSEL. ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE VOTING INSTRUCTIONS WILL <u>NOT</u> BE COUNTED EXCEPT AS DETERMINED BY THE DEBTOR.**

### E. Confirmation and Consummation of the Plan

Under section 1128(a) of the Bankruptcy Code, the Bankruptcy Court, after notice, may hold a hearing to confirm a plan of reorganization. When initially sought preliminary approval of its initial Disclosure Statement but the same has been replaced by this First Amended Disclosure Statement. The Bankruptcy Court shall determine whether the Disclosure Statement contains adequate information under section 1125(a) of the Bankruptcy Code and whether the Plan should be confirmed in light of both the affirmative requirements of the Bankruptcy Code and objections, if any, that are timely filed. This First Amended Disclosure Statement is filed to address the only formal objections raised, which were by counsel for secured creditor, Pamela Cunningham [Doc. 27] as well as concerns of for clarification and further disclosure by the Office of the US Trustee and the Court. Additionally, the Debtor had hoped of come to a resolution on the dispute over the balance due on the Cunningham claim and rights of Ms. Cunningham before submission; however, no resolution has yet been reached.

Additionally, Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation of the proposed plan. The Debtor will be requesting that the Bankruptcy Court set a date and time for parties in interest to file objections to the adequacy of the Disclosure Statement, the Debtor's prepetition solicitation of acceptances in support of the Plan, and Confirmation of the Plan. All such objections must be filed with the Bankruptcy Court and served on the Debtor and certain other parties in interest in accordance with the applicable order of the Bankruptcy Court so that they are received before the deadline to file such objections.

**Effect of Confirmation and Consummation of the Plan**

Following Confirmation, the Plan will be Consummated on the Effective Date. Among other things, on the Effective Date. Accordingly, it is important to read the provisions contained in the Plan very carefully so that you understand how Confirmation and Consummation will affect you and any Claim or Interest you may hold with respect to the Debtor so that you may cast your vote accordingly.   Debtor may file certain documents that provide more details about implementation of the Plan in a Plan Supplement, which will be filed with the Bankruptcy Court no later than seven (7) calendar days before the Confirmation Objection Deadline. The Debtor will serve a notice that will inform all parties that the initial Plan Supplement was filed, list the information included therein, and explain how copies of the Plan Supplement may be obtained. Eligible Holders of Claims and Interests entitled to vote to accept or reject the Plan shall not be entitled to change their vote based on the contents of the Plan Supplement after the Voting Deadline. The Plan Supplement will include the terms of the Debtor's  listing of the  Jack County property, unless a lender is identified to refinance the mortgage and any other terms of clarification based on sales prior to the Confirmation Hearing.

> *THE FOREGOING EXECUTIVE SUMMARY IS ONLY A GENERAL OVERVIEW OF THIS DISCLOSURE STATEMENT AND THE MATERIAL TERMS OF, AND TRANSACTIONS PROPOSED BY, THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO, AND SHOULD BE READ IN CONJUNCTION WITH, THE MORE DETAILED DISCUSSIONS APPEARING ELSEWHERE IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED TO THIS DISCLOSURE STATEMENT, INCLUDING THE PLAN.*

**The Debtor's Business Operations and Capital Structure**

**F.  The Debtor's Corporate History**

The Debtor was originally formed by Andrea Vernon in May of 2017 as a land acquisition and development company. The initial goal was to identify land in sparsely developed areas and to hold onto most of the land for future use in the areas of dog rescue and horse rescue.  The owner's personal resources were used for the down payments and short- term servicing of the mortgages.  The long-term plan was two-fold.-(1) The majority of the land would be held for a period of time to reap the benefits of increases in value over time and increased demand for housing in the areas where the land is situated; and (2)  A small portion of the land was ultimately to be developed, in coordination with an experienced builder, for home construction and sales to provide funds to complete the payment of  the initial purchase-money private mortgages and any outstanding tax obligations associated with the real estate. The initial concept was that a selected builder would contribute labor and material for a home or homes, the Debtor would contribute the lot, and the sales proceeds would benefit the Debtor as they would be used to make lump sum paydowns on the mortgage for that land. In return for its upfront capital contributions and later releases of mechanics' lien claims, the Debtor would deed a portion of the larger parcel to the builder and retain the rest as free and clear raw land.

### G. The Debtor's Business Operations

The Debtor itself does not directly "operate" yet. It has been holding real estate, developing single homes with builders, and selling them. For a few of the sales the Debtor has taken back a Note which generates monthly income.  As of the Petition Date the Debtor was receiving secured note income, mental _____ and proceeds from joint ventures.  As to the rest of the individual lot sales, the Debtor has used the funds generated to pay down the purchase money mortgages. Ultimately, the Debtor's operations will consist of growing hay for its goats, possibly entering into grazing leases for income, and conducting dog and horse rescue on the remaining raw land.

### H. The Jumba, LLC's Corporate Structure

The Debtor is a single-member LLC, with the sole manager and member being Andrea Vernon.

### Events Leading to These Chapter 11 Cases

The Debtor has been fortunate by making wise investments (as its land has significantly appreciated) and also by receiving accommodations from the former landowners who took back mortgages for portions of the land purchase prices and have accepted lump sum paydowns and granted extensions.  Unfortunately, COVID, changes in the economy and real estate and home construction market, as a whole, significantly delayed development of homes that were slated to pay off the balance of the Debtor's debts.  Additionally, the failure of the Parker County appraiser to properly handle Debtor's timely agricultural exemption on the Parker County land, has resulted in higher taxes on the Parker land and legal fees arising from a tax lawsuit served in July of 2022. While trying to get that issue resolved, the Debtor was also seeking an extension of maturity date on the Johnson County mortgage as the homes which were to be completed to pay off that obligation in 6 closings, had not been completed, some buyers were unable to close, home values had decreased in the area and interest rates had significantly begun to increase. . Instead of granting an extension, to be funded by the guarantor on that loan, a Notice of Foreclosure was posted by C&G , forcing the Debtor to seek Chapter 11 Relief.

At the time of filing bankruptcy, the Debtor had income from a small rental house on the Johnson property, and income from 3 secured promissory notes which paid monthly. This income has continued throughout the case. Additionally, at the time of filing, the Debtor's joint venture with Kairos Homes, LLC had 6 homes under contract and under construction which were anticipated, per the C&G mortgage terms, to be sold to pay off the C&G mortgage.  The Debtor also had an interested buyer in some of the Parker County land which would fully satisfy the taxes and mortgage obligation on that property. The maturity date had also been reached on the last mortgage, that due to Pam Cunningham on the Jack County property; however, Ms. Cunningham had been accepting  partial payments of $10,000 from the Debtor's joint venture activities and it was anticipated that her mortgage could be modified or refinanced after the other properties were paid off.

### The Debtor's Proposed Restructuring: Key Components

The Debtor commenced this Chapter 11 Case to implement this restructuring through the Plan, a copy of which is attached to this First Amended  Disclosure Statement as **Exhibit A**.

Substantial progress has been made in the past 6 months. First, 6 houses were completed and sold in Johnson County pursuant to the Debtor's joint venture with the builder which has reduced the C&G mortgage obligation from approx. $3.8 mil. down to approx. $1.3 mil and the court has approved the completion and sale of the last two homes on the Johnson County property to pay off this secured obligation. Due to lost sales, drastic changes in interest rates and available mortgages since the filing, the initial 6 homes were not sufficient alone to satisfy the C&G mortgage. Taxes have been paid with each parcel and no other mortgages encumber the Johnson County Land.  Secondly, the sale of the 10.75 acres in Parker County cured the disputed real property tax debts and paid off the sole mortgage on that land due to Mr. Little so it is now free and clear other than current taxes.  The Plan contemplates completion of the pending land sales to fully satisfy the tax and mortgage obligations on both the Johnson County and Parker County parcels and payment of the mortgage on  the Jack County property either by a cash contribution of the Debtor's principal to pay off the allowed Cunningham secured lien or a sale of all or part of the Jack County property to pay off the Cunningham lien once the amount is determined.

- As sales are completed, all secured creditors will be paid in full once their payoffs have been reviewed and confirmed. In the case of the Cunningham mortgage on the Jack County land, contested proceedings will need to address the allowed amount and extent of her claim before it can be paid.

- all Administrative Claims, Priority Tax Claims, and Unsecured Claims will be paid in full in Cash.

- The Debtor shall obtain a new loan sufficient to pay Effective Date obligations as well as the Cunningham mortgage in connection with funds from the Debtor's sole member.

The Debtor's original plan was to refinance the Jack County property to pay all Effective Date obligations and to pay off the allowed amount of Mrs. Cunningham's secured claim; however, the Debtor's inquiries indicate that the raw land lenders are not making loans at this time. So, the Debtor intends to either obtain funds from Andrea Vernon, the owner, or to list the approx. 90 acres of land in Jack County to pay off the Cunningham secure claim and all administrative claims.  The Debtor has not yet identified the realtor to be used as listing agent; however, that realtor and the terms of such listing will be filed in a Plan Supplement. .

**The Debtor's Proposed Disclosure Statement and Solicitation Process.**

The Debtor will commence a solicitation of the Plan on June15, 2023, by delivering a copy of the Plan and this related First Amended Disclosure Statement (including Ballots) to Holders of Class 3, 4, 5, 6 and 7 claims, to the extent that they are entitled to vote to accept or reject the Plan at the time of balloting. The Debtor has established _____, 2023 at 11:59 p.m., prevailing Central Time, as the deadline for the receipt of votes to accept or reject the

Plan (the "Voting Deadline").

The Debtor will seek Bankruptcy Court approval of the Voting Deadline. As soon as reasonably practicable after the Voting Deadline, the Debtor's counsel , acting as the Solicitation Agent, will file the Voting Report with the Bankruptcy Court setting forth the voting results. The Debtor believes that the Voting Report likely will show that the Holders of Claims and Interests entitled to vote on the Plan have overwhelmingly voted to accept the Plan. The following table sets forth the timetable for the solicitation process and the anticipated Chapter 11 Cases.

| Proposed Solicitation and Confirmation Timeline | |
|---|---|
| Approval of Disclosure Statement | June 12, 2023 |
| Commencement of Solicitation | June 15, 2023 |
| Mailing of Plan and First Amended Disclosure Statement | One business day after entry of an order approving the Disclosure Statement\ |
| Filing of Plan Supplement, if needed | Seven days before the Plan Objection Deadline |
| Confirmation Objection Deadline | TBD |
| Voting Deadline | TBD |
| Deadline to File Reply Brief | TBD |
| Anticipated Plan Confirmation Hearing | TBD |

## II. Summary of the Plan

### A. Treatment of Unclassified Claims

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified and, thus, are excluded from the Classes of Claims set forth in Article III of the Plan.

#### 1. Administrative Claims

Unless otherwise agreed to by the Holders of an Allowed Administrative Claim and the Debtor or the Reorganized Debtor, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses of professionals) shall either receive, in full and final satisfaction of its Administrative Claim, an amount of Cash equal to the amount of such Allowed Administrative Claim, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, in accordance with the following: (a) if an Administrative Claim is Allowed as of the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); or (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than the date

on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter.

### 2. Professional Fee Claims

#### (a) Professional Fee Escrow Account

On or prior to the Effective Date, the Debtor shall establish and the principal of the Debtor will fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Such funds shall not be considered property of the Estate, the Debtor, or the Reorganized Debtor.

The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Debtor or the Reorganized Debtor, as applicable, from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; provided that the Debtor's and the Reorganized Debtor's obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtor without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

#### (b) Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Reorganized Debtor shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals, including from funds held in the Professional Fee Escrow Account when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

#### (c) Professional Fee Escrow Amount

The Professionals shall provide a reasonable and good-faith estimate of their fees and expenses incurred in rendering services to the Debtor before and as of the Effective Date projected to be  outstanding  as  of  the Effective Date, and shall deliver such estimate to the Debtor no later than five days before the anticipated Effective Date; provided, however, that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtor may estimate a reasonable amount of unbilled fees and expenses of such Professional, taking into account any prior payments; provided, however, that such estimate shall not be binding or considered an admission with respect to the fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtor to determine the amount to be funded to the Professional Fee Escrow Account.

### (d)  Post-Confirmation Date Fees and Expenses

From and after the Confirmation Date, the Debtor or Reorganized Debtor, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtor or the Reorganized Debtor, as applicable. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor and Reorganized Debtor, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

The Debtor and Reorganized Debtor, as applicable, shall pay, within ten (10) business days after submission of a detailed invoice to the Debtor or Reorganized Debtor, as applicable, such reasonable claims for compensation or reimbursement of expenses incurred by the retained Professionals of the Debtor or the Reorganized Debtor, as applicable. If the Debtor or Reorganized Debtor, as applicable, dispute the reasonableness of any such invoice, the Debtor or Reorganized Debtor, as applicable, or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved.

### 3.  Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall, either be paid in full in Cash, or otherwise

be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

## B. Classification of Claims and Interests

All Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The following chart represents the classification of Claims and Interests pursuant to the Plan:

| VOTING CLASSES | NAME OF CLASS UNDER THE PLAN |
|---|---|
| CLASS 1 | Parker County |
| CLASS 2 | Jack County |
| CLASS 3 | Johnson County |
| CLASS 4 | Alvarado ISD |
| CLASS 5 | C&G Realty E, LLC |
| CLASS 6 | Leland B. Little |
| CLASS 7 | Pamela Diane Cunningham secured claim [amount disputed] |
| CLASS 8 | Tri County Utilities and Pamela Cunningham unsecured claim [disputed] |
| CLASS 9 | Joint Venture Obligation |

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtor or the Reorganized Debtor, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

## C. Means for Implementation of the Plan

### 1. General Settlement of Claims and Interests

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan,

upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, their Estates, and Holders of Claims and Interests and is fair, equitable, and is within the range of reasonableness. Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

### (a) Cash on Hand

The Debtor or Reorganized Debtor, as applicable, shall use Cash on hand to fund distributions to certain Holders of Claims, including the payment of Allowed General Unsecured Claims as set forth in Article III of the Plan.

### 2. Corporate Existence

Except as otherwise provided in the Plan, the Plan Supplement the Debtor shall continue to exist after the Effective Date as single member limited liability company, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

### 3. Corporate Action

On or before the Effective Date, as applicable, all actions contemplated under the Plan or the Plan Supplement shall be deemed authorized and approved in all respect.

### 4. Vesting of Assets in the Reorganized Debtor

Except as otherwise provided in the Plan or the Plan Supplement, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in the Debtor's Estate, all Causes of Action, and any property acquired by the Debtor under the Plan shall vest inthe Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances, and the Liens securing obligations on account of Other Secured Claims that are Reinstated

pursuant to the Plan, if any). On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### 5.    Effectuating Documents; Further Transactions

On and after the Effective Date, the Reorganized Debtor, and the officers and members of the boards of directors and managers thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan pursuant to the Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

### 6.    Exemption from Certain Taxes and Fees

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from the Debtor or Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other Interest in the Debtor or the Reorganized Debtor, (b) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; (d) the grant of collateral as security for refinance of Cunningham Note, as applicable; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, in each case shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 7.    Preservation of Causes of Action

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, including pursuant to Article VIII of the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date.

In accordance with section 1123(b)(3) of the Bankruptcy Code, any and all Causes of Action of the Debtor are preserved, including any liable claims against Brenda Hurst and others posting to her Facebook group, and shall vest in the Reorganized Debtor. The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The applicable Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

### 8.    Release of Avoidance Actions

On the Effective Date, the Debtor, on behalf of itself and its estate, shall release any and all Avoidance Actions, and the Debtor, the Reorganized Debtor, and any of their successors or assigns, and any Entity acting on behalf of the Debtor or the Reorganized Debtor shall be deemed to have waived the right to pursue any and all Avoidance Actions, except for Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtor.

## D.    Treatment of Executory Contracts and Unexpired Leases

### 1.    Assumption of Executory Contracts and Unexpired Leases

On the Effective Date, except as otherwise provided in the Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, all Executory Contracts and Unexpired Leases shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code, and regardless of whether such Executory Contract or Unexpired Lease is identified on the Assumed Executory Contract and Unexpired Lease List, unless such Executory Contract and Unexpired Lease: (a) was assumed or rejected previously by the Debtor;(b) previously expired or terminated pursuant to its own terms or  (c) is the subject of a motion to reject filed on or before the Effective Date.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumption, assumption and assignment, or rejection, as applicable, of such Executory Contracts or Unexpired Leases as set forth in the Plan, the Assumed Executory Contract and Unexpired Lease List, and the Rejected Executory Contract and Unexpired Leases List, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing  and providing for its assumption under applicable federal law.

To the maximum extent permitted by law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

## 2.  Insurance Policies

Each of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, the Debtor shall be deemed to have assumed all insurance policies, as well as any agreements, documents, and instruments relating to such insurance policies or coverage of all insured Claims. Except as set forth in Article V.F of the Plan, nothing in the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any other order of the Bankruptcy Court (including any other provision that purports to be preemptory or supervening), (a) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (b) alters or modifies the duty, if any, that the insurers or third party administrators pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtor (or after the Effective Date, the Reorganized Debtor) or draw on any collateral or security therefor. For the avoidance of doubt, insurers and third party administrators shall not need to nor be required to file or serve a cure objection or a request, application, claim, Proof of Claim, or motion for payment and shall not be subject to any claims bar date or similar deadline governing cure amounts or Claims.

### 3. Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### 4. Reservation of Rights

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtor or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtor or the Reorganized Debtor, as applicable, shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease nunc pro tunc to the Confirmation Date.

### 5. Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

### 6. Contracts and Leases Entered into After the Petition Date

Contracts and leases entered into after the Petition Date by any Debtor and any Executory Contracts and Unexpired Leases assumed by any Debtor may be performed by the applicable Reorganized Debtor in the ordinary course of business.

## E. Settlement, Release, Injunction, and Related Provisions

1. **Compromise and Settlement of Claims, Interests, and Controversies**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtor may compromise and settle Claims against, and Interests in, the Debtor and their Estates and Causes of Action against other Entities.

2. **Discharge of Claims and Termination of Interests**

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by agents of any builder on Debtor's land before the Effective Date and that arise from a termination of employment, any contingent or noncontingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtor with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims

and Interests subject to the Effective Date occurring.

### 3.   Protection Against Discriminatory Treatment

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Entity with which a Reorganized Debtor has been or is associated, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor, or another Entity with whom the Reorganized Debtor have been associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

### 4.   Recoupment

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

### 5.   Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.

### 6.   Document Retention

On and after the Effective Date, the Reorganized Debtor may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtor.

## III.   <u>Confirmation of the Plan</u>

### A.   Requirements for Confirmation of the Plan

### 1.   Requirements of Section 1129(a) of the Bankruptcy Code

Among the requirements for Confirmation are the following: (a) the Plan is accepted by all Impaired Classes of Claims and Interests or, if the Plan is rejected by an Impaired Class, at least one Impaired Class of Claims or Interests has voted to accept the Plan and a determination that the Plan "does not discriminate unfairly" and is "fair and equitable" as to Holders of Claims or Interests in all rejecting Impaired Classes; (b) the Plan is feasible; and (c) the Plan is in the "best interests" of Holders of Impaired Claims and Interests.

At the Combined Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code. The Debtor believes that the Plan satisfies or will satisfy all of the necessary requirements of chapter 11 of the Bankruptcy Code. Specifically, in addition to other applicable requirements, the Debtor believes that the Plan satisfies or will satisfy the applicable requirements of section 1129 of the Bankruptcy Code set forth below.

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtor, as the Plan proponent, has complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, will be disclosed to the Bankruptcy Court, and any such payment (a) made before Confirmation will be reasonable or (b) will be subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after Confirmation.

- Either each Holder of an Impaired Claim against or Interest in the Debtor will accept the Plan, or each non-accepting Holder will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that the Holder would receive or retain if the Debtor were liquidated on that date under chapter 7 of the Bankruptcy Code.

- Except to the extent that the Holder of a particular Claim agrees to a different treatment of its Claim, the Plan provides that, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases Allowed Administrative Claims will be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable.

- At least one Class of Impaired Claims will have accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class.

- Confirmation is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor or any successors thereto under the Plan.

- All fees of the type described in 28 U.S.C. § 1930, including the fees of the U.S. Trustee, will be paid as of the Effective Date.

Section 1126(c) of the Bankruptcy Code provides that a class of claims has accepted a plan of reorganization if such plan has been accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class. Section 1126(d) of the Bankruptcy Code provides that a class of interests has accepted a plan of reorganization if such plan has been accepted by holders of such interests that hold at least two-thirds in amount of the allowed interests of such class.

## 2. Feasibility/Financial Projections

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a chapter 11 plan of reorganization is not likely to be followed by the liquidation of the reorganized debtor or the need for further financial reorganization of the debtor, or any successor to the debtor (unless such liquidation or reorganization is proposed in the chapter 11 plan). For purposes of determining whether the Plan meets this requirement, the Debtor has analyzed  its ability to meet its obligations under the Plan.

## 3. Best Interests of Creditors—Liquidation Analysis

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each class, that each holder of a claim or an interest in such class either (a) has accepted the plan or (b) will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor liquidated under chapter 7 of the Bankruptcy Code.

To demonstrate compliance with the "best interests" test, the Debtor, with the assistance of their Advisors, prepared the Liquidation Analysis, attached hereto as Exhibit B.

## 4. Acceptance by Impaired Classes

The Bankruptcy Code requires that, except as described in the following section, each impaired class of claims or interests must accept a plan in order for it to be confirmed. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to the class

is not required. A class is "impaired" unless the plan: (a) leaves unaltered the legal, equitable, and contractual rights to which the claim or the interest entitles the holder of the claim or interest; (b) cures any default, reinstates the original terms of such obligation, compensates the holder for certain damages or losses, as applicable, and does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest; or (c) provides that, on the consummation date, the holder of such claim receives cash equal to the allowed amount of that claim or, with respect to any equity interest, the holder of such interest receives value equal to the greater of(i) any fixed liquidation preference to which the holder of such equity interest is entitled, (ii) the fixed redemption price to which such holder is entitled, or (iii) the value of the interest.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in that class, counting only those claims that actually voted to accept or to reject the plan. Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number of creditors actually voting cast their ballots in favor of acceptance. For a class of impaired interests to accept a plan, section 1126(d) of the Bankruptcy Code requires acceptance by interest holders that hold at least two-thirds in amount of the allowed interests of such class, counting only those interests that actually voted to accept or reject the plan. Thus, a class of interests will have voted to accept the plan only if two-thirds in amount actually voting cast their ballots in favor of acceptance.

## 5. Confirmation Without Acceptance by All Impaired Classes

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if all impaired classes have not accepted the plan, provided that the plan has been accepted by at least one impaired class of claims. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class rejection or deemed rejection of the plan, the plan will be confirmed, at the plan proponent's request, in a procedure commonly known as "cramdown," so long as the plan does not "discriminately unfairly" and is "fair and equitable" with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

If any Impaired Class of Claims or Interests rejects the Plan, including Classes of Claims or Interests deemed to reject the Plan, the Debtor will request Confirmation of the Plan, as it may be modified from time to time, utilizing the "cramdown" provision under section 1129(b) of the Bankruptcy Code. The Debtor reserve the right to modify the Plan in accordance with Article I and X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules or to withdraw

the Plan as to such Debtor.

The Debtor believes that the Plan and the treatment of all Classes of Claims and Interests under the Plan satisfy the requirements for cramdown and the Debtor will be prepared to meet  itsburden to establish that the Plan can be Confirmed pursuant to section 1129(b) of the Bankruptcy Code as part of Confirmation of the Plan.

### (a)  No Unfair Discrimination

The "unfair discrimination" test applies with respect to classes of claim or interests that are of equal priority but are receiving different treatment under a proposed plan. The test does not require that the treatment be the same or equivalent, but that the treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (e.g., classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly. Under certain circumstances, a proposed plan may treat two classes of unsecured creditors differently without unfairly discriminating against either class.

With respect to the unfair discrimination requirement, all Classes under the Plan are provided treatment that is substantially equivalent to the treatment that is provided to other Classes that have equal rank. Accordingly, the Debtor believes that the Plan meets the standard to demonstrate that the Plan does not unfairly discriminate and the Debtor will be prepared to meet their burden to establish that there is no unfair discrimination as part of Confirmation of the Plan.

### (b)  Fair and Equitable Test

The "fair and equitable" test applies to classes of different priority and status (e.g., secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class. As to each non-accepting class and as set forth below, the test sets different standards depending on the type of claims or interests in such class. The Debtor believes that the Plan satisfies the "fair and equitable" requirement, notwithstanding the fact that certain Classes are deemed to reject the Plan. There is no Class receiving more than a 100% recovery and no junior Class is receiving a distribution under the Plan until all senior Classes have received a 100% recovery or agreed to receive a different treatment under the Plan.

### (i)  Secured Claims

The condition that a plan be "fair and equitable" to a non-accepting class of secured claims includes the requirements that: (A) the holders of such secured claims retain the liens securing such claims to the extent of the allowed amount of the claims, whether the property subject to the liens is retained by the debtor or

transferred to another entity under the plan; and (B) each holder of a secured claim in the class receives deferred cash payments totaling at least the allowed amount of such claim with a value, as of the effective date, at least equivalent to the value of the secured claimant's interest in the debtor's property subject to the claimant's liens.

### (ii)  Unsecured Claims

The condition that a plan be "fair and equitable" to a non-accepting class of unsecured claims includes the requirement that either: (A) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date, equal to the allowed amount of such claim; or (B) the holder of any claim or any interest that is junior to the claims of such class will not receive or retain any property under the plan on account of such junior claim or junior interest, subject to certain exceptions.

### (iii)  Interests

The condition that a plan be "fair and equitable" to a non-accepting class of interests, includes the requirements that either: (A) the plan provides that each holder of an interest in that class receives or retains under the plan on account of that interest property of a value, as of the effective date, equal to the greater of: (1) the allowed amount of any fixed liquidation preference to which such holder is entitled; (2) any fixed redemption price to which such holder is entitled; or (3) the value of such interest; or (B) the holder of any interest that is junior to the interests of such class will not receive or retain any property under the plan on account of such junior interest.

## IV.  <u>Voting Instructions</u>

### A.  Overview

Holders of Claims and Interests entitled to vote should carefully read the below voting instructions.

### B.  Solicitation Procedures

#### 1.  Solicitation Agent

The Debtor's Attorney shall serve as the Solicitation Agent in connection with the solicitation of votes to accept or reject the Plan. The Debtor's Attorney will process, and tabulate, Ballots for each Class entitled to vote to accept or reject the Plan and will file the Voting Report as soon as practicable after the Voting Deadline.

#### 2.  Solicitation Package

The following materials constitute the solicitation package (the "Solicitation Package") distributed to Holders of Claims and Interests in the Voting Classes:

- the Debtor's cover letter in support of the Plan;
- the appropriate Ballot and applicable voting instructions, together with a pre-addressed, postage pre-paid return envelope;

- a form of Combined Hearing Notice; and
- this Disclosure Statement and all exhibits hereto, including the Plan and all exhibits thereto (which may be distributed in paper or USB-flash drive format).

### 3. Voting Deadline

The period during which Ballots with respect to the Plan will be accepted by the Debtor will terminate at **11:59 p.m. \*\*\***, unless the Debtor extend the date until which Ballots will be accepted. Except to the extent that the Debtor so determine or as permitted by the Bankruptcy Court, Ballots that are received after the Voting Deadline will not be counted or otherwise used by the Debtor in connection with the Debtor's request for Confirmation of the Plan (or any permitted modification thereof).

The Debtor reserve the right, at any time or from time to time, to extend the period of time (on a daily basis, if necessary) during which Ballots will be accepted for any reason, including determining whether or not the requisite number of acceptances have been received, by making a public announcement of such extension no later than the first Business Day next succeeding the previously announced Voting Deadline. The Debtor will give notice of any such extension in a manner deemed reasonable to the Debtor in their discretion. There can be no assurance that the Debtor will exercise its right to extend the Voting Deadline.

### 4. Distribution of the Solicitation Package and Plan Supplement

The Debtor will distribute the Solicitation Package to Holders of Claims and Interests in the Voting Classes on \*\*\*, which is 31 days before the Voting Deadline.

The Solicitation Package (except the Ballots) may also be obtained from the Debtor's Counsel by: (a) calling the Debtor's counsel or (b) emailing LVargas@chfirm.com.

The Debtor will file the Plan Supplement in accordance with the terms of the Plan. As the Plan Supplement is updated or otherwise modified, such modified or updated documents will be made available on the Debtor's restructuring website. The Debtor will serve paper copies of the Plan Supplement.

### C. Voting Procedures.

The voting record date is ***, (the "Voting Record Date"), which date was used for to determine which Holders of Claims and Interests are entitled to vote to accept or reject the Plan and receive the Solicitation Package in accordance with the solicitation procedures. Except as otherwise set forth herein, the Voting Record Date and all of the Debtor's solicitation and voting procedures shall apply to all of the Debtor's creditors and other parties in interest.

In order for the Holder of a Claim or Interest in the Voting Classes to have such Holder's Ballot counted as a vote to accept or reject the Plan, such Holder's Ballot must be properly completed, executed, and delivered by:

(a) using the enclosed pre-paid, pre-addressed return envelope; (b) via first-class mail, overnight courier, or hand delivery to the Solicitation Agent ***; or (c) via electronic submission through the Solicitation Agent's online voting portal at ****, so that such Holder's Ballot is actually received by the Solicitation Agent before the Voting Deadline.

IF A BALLOT IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED UNLESS THE DEBTOR DETERMINE OTHERWISE.

ANY BALLOT THAT IS PROPERLY EXECUTED BY THE HOLDER OF A CLAIM OR INTEREST BUT THAT DOES NOT CLEARLY INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN OR ANY BALLOT THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN WILL NOT BE COUNTED FOR PURPOSES OF ACCEPTING OR REJECTING THE PLAN.

EACH HOLDER OF A CLAIM OR INTEREST MUST VOTE ALL OF ITS CLAIMS OR INTERESTS WITHIN A PARTICULAR CLASS EITHER TO ACCEPT OR REJECT THE PLAN AND MAY NOT SPLIT SUCH VOTES. BY SIGNING AND RETURNING A BALLOT, EACH HOLDER OF A CLAIM OR INTEREST WILL CERTIFY TO THE BANKRUPTCY COURT AND THE DEBTOR THAT NO OTHER BALLOTS WITH RESPECT TO SUCH CLAIM OR INTEREST HAVE BEEN CAST OR, IF ANY OTHER BALLOTS HAVE BEEN CAST WITH RESPECT TO SUCH CLASS OF CLAIMS OR INTERESTS, SUCH OTHER BALLOTS INDICATED THE SAME VOTE TO ACCEPT OR REJECT THE PLAN. IF A HOLDER CASTS MULTIPLE BALLOTS WITH RESPECT TO THE SAME CLASS OF CLAIMS OR INTERESTS AND THOSE BALLOTS ARE IN CONFLICT WITH EACH OTHER, SUCH BALLOTS WILL NOT BE COUNTED FOR PURPOSES OF ACCEPTING OR REJECTING THE PLAN.

IT IS IMPORTANT THAT THE HOLDER OF A CLAIM OR INTEREST IN THE VOTING CLASSES FOLLOWS THE SPECIFIC INSTRUCTIONS PROVIDED ON SUCH HOLDER'S BALLOT.

### D.  Voting Tabulation

A Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of a Claim. Only Holders of Claims and Interests in the Voting Classes shall be entitled to vote with regard to such Claims and Interests.

Unless the Debtor decides otherwise, Ballots received after the Voting Deadline may not be counted. A Ballot will be deemed delivered only when the Solicitation Agent actually receives the executed Ballot as instructed in the applicable voting instructions. No Ballot should be sent to the Debtor, the Debtor's agents (other than the Solicitation Agent), or the Debtor's financial or legal advisors.

The Bankruptcy Code may require the Debtor to disseminate additional solicitation materials if the Debtor make material changes to the terms of the Plan or if the Debtor waive a material condition to confirmation of the Plan. In that event, the solicitation will be extended to the extent directed by the Bankruptcy Court.

To the extent there are multiple Claims or Interests within Voting Classes, the Debtor may, in their discretion, and to the extent possible, aggregate the Claims or Interests of any particular Holder within a Voting Class for the purpose of counting votes.

In the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Bankruptcy Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected.

The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim or Interest; (b) any Ballot that is not actually received by the Solicitation Agent by the Voting Deadline (unless the Debtor determine otherwise or as permitted by the Court); (c) any unsigned Ballot; (d) any Ballot that partially rejects and partially accepts the Plan; (e) any Ballot superseded by a later, timely submitted valid Ballot; (f) any improperly submitted Ballot, or any form of ballot other than the official form of Ballot sent by the Solicitation Agent (unless the Debtor determine otherwise or as permitted by the Court); and (g) any Ballot cast by a person or entity that does not hold a Claim or Interest in a Class that is entitled to vote on the Plan.

As soon as reasonably practicable after the Voting Deadline, the Solicitation Agent will file the Voting Report with the Bankruptcy Court. The Voting Report shall, among other things, delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity (each, an "Irregular Ballot"), including those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or lacking necessary information, or damaged. The Solicitation Agent will attempt to reconcile the amount of any Claim or Interest reported on a Ballot with the Debtor's records, but in the event such amount cannot be timely reconciled without undue effort on the part of the Solicitation Agent, the amount shown in the Debtor's records shall govern. The Voting Report also shall indicate the Debtor's intentions with regard to such Irregular Ballots. Neither the Debtor nor any other Person or Entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report, nor will any of them incur any liability for failure to provide such notification.

## V. <u>Risk Factors</u>

**BEFORE TAKING ANY ACTION WITH RESPECT TO THE PLAN, HOLDERS**

**OF CLAIMS AGAINST OR INTERESTS IN THE DEBTOR WHO ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN SHOULD READ AND CONSIDER CAREFULLY THE RISK FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, THE PLAN, AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH, REFERRED TO, OR INCORPORATED BY REFERENCE INTO THIS DISCLOSURE STATEMENT, INCLUDING OTHER DOCUMENTS FILED WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES. THE RISK FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS PRESENT IN CONNECTION WITH THE DEBTOR'S BUSINESSES OR THE RESTRUCTURING AND CONSUMMATION OF THE PLAN. EACH OF THE RISK FACTORS DISCUSSED IN THIS DISCLOSURE STATEMENT MAY APPLY EQUALLY TO THE DEBTOR AND THE REORGANIZED DEBTOR, AS APPLICABLE AND AS CONTEXT REQUIRES.**

**A.  Miscellaneous Risk Factors and Disclaimers**

**1.  The Financial Information Is Based on the Debtor's Books and Records and, Unless Otherwise Stated, No Audit Was Performed**

In preparing this Disclosure Statement, the Debtor relied on financial data derived from  its books and records that was available at the time of such preparation. Although the Debtor has used its reasonable business judgment to assure the accuracy of the financial information provided in this Disclosure Statement, and while the Debtor believes that such financial information fairly reflects their financial condition, the Debtor is unable to warrant or represent that the financial information contained in this Disclosure Statement (or any information in any of the exhibits to the Disclosure Statement) is without inaccuracies.

**2.  No Legal or Tax Advice Is Provided by This Disclosure Statement**

This Disclosure Statement is not legal advice  to  any  person  or  Entity.  The contents of  this  Disclosure Statement should not be construed as legal, business, or tax advice. Each reader should consult its own legal counsel and accountant with regard to any legal, tax, and other matters concerning its Claim. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote to accept or reject the Plan or whether to object to Confirmation.

**3.  No Admissions Made**

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity (including the Debtor) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtor, the Reorganized Debtor, Holders of Allowed Claims or Interests, or any other parties in interest.

### 4. Failure to Identify Litigation Claims or Projected Objections

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim is, or is not, identified in this Disclosure Statement. The Debtor may seek to investigate, file, and prosecute Claims and may object to Claims after Confirmation and Consummation of the Plan, irrespective of whether this Disclosure Statement identifies such Claims or objections to Claims.

### 5. Information Was Provided by the Debtor and Was Relied Upon by the Debtor's Advisors

Counsel to and other advisors retained by the Debtor have relied upon information provided by the Debtor in connection with the preparation of this Disclosure Statement. Although counsel to and other advisors retained by the Debtor have performed certain limited due diligence in connection with the preparation of this Disclosure Statement and the exhibits to the Disclosure Statement, they have not independently verified the information contained in this Disclosure Statement or the information in the exhibits to the Disclosure Statement.

### 6. No Representations Outside This Disclosure Statement Are Authorized

No representations concerning or relating to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure voting Holders' acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement, should not be relied upon by voting Holders in arriving at their decision. Holders of Claims and Interests in Voting Classes should promptly report unauthorized representations or inducements to counsel to the Debtor and the Office of the United States Trustee for the District of Delaware.

## VI.    Recommendation of the Debtor.

In the opinion of the Debtor, the Plan is preferable to the alternatives described in this Disclosure Statement because it provides for a guranteed distribution to Holders of Allowed Claims and Interests in a much  shorter period of time than would otherwise result in a liquidation under chapter 11 of the Bankruptcy Code. Capital gains would result if all raw land was sold at this time.   In addition, any alternative other than Confirmation could result in extensive delays and increased administrative expenses resulting in smaller distributions to Holders of Allowed Claims than proposed under the Plan. Accordingly, the Debtor recommends that Holders of Claims and Interests entitled to vote to accept or reject the Plan support Confirmation and vote to accept the Plan.

The Jumba, LLC,

By _____

Sole Manager and Member